**Duron v.
Lexington Manufacturing Co., Inc.**
*[Cite as 7 AOA 141]*

*Case No. CA-2753*

*Richland County, (5th)
Decided October 19, 1990*

*Stewart R. Jaffy and Renny J. Tyson, 306 East Gay Street, Columbus, Ohio 43215, for Plaintiffs-Appellants.*

*David D. Carto, 28 Park Avenue, West, Mansfield, Ohio 44902, for Defendant-Appellee.*

SMART, J.

This is an appeal from a summary Judgment of the Court of Common Pleas of Richland County, Ohio, entered in favor of defendant-appellee, Lexington Manufacturing Company, Inc. (employer), and against plaintiffs-appellants, Robert L. Duron, Adam Mohr, and Kenneth Lambert (employees), on their complaint for wrongful discharge.

The record indicates that employer discharged employees on June 8, 1987, for allegedly deliberately restricting output. Employees allegedly had expressed dissatisfaction over nonpayment of incentives or holiday pay on or about June 4, 1987. On June 5, 1987, the entire second shift, consisting of the three appellants-employees and two others, called in sick. On June 8, employer asked for medical excuses but discharged employees without investigation and without giving them the opportunity to obtain the excuses or to respond to employer's accusations.

Employees' complaints alleged that employer had given each of them an employee handbook and had told them that they could not be fired except for violation of company policies outlined in that handbook. Each signed an application that provided in part:

"I authorize investigation of all statements contained in this application. I understand that misrepresentation or omission of facts called for is cause for dismissal. Further, I understand and agree that my employment is for a definite period and may, regardless of the date of pay-

ment of my wages and salary, be terminated at any time without previous notice." Employees alleged that they relied to their detriment on the oral representations that they could not be discharged without cause.

Employer conceded that it had not given employees any prior warning, but maintained that the employment was terminable at-will, and as such the reason for their discharge was irrelevant. The trial court found that the handbook and the oral representations of employer's agent were insufficient to demonstrate a contract, particularly in light of the disclaimer contained in the application. The trial court also found no evidence that employees relied to their detriment on any representations made by employer's agent.

Employees assign seven errors to the trial court:

"I. WHERE EVIDENCE CONTRADICTING DEFENDANT'S ALLEGATION OF GOOD CAUSE FOR DISCHARGE PURSUANT TO ITS WORK RULES IS PRESENTED, A JURY QUESTION IS PRESENTED AND THE COMMON PLEAS COURT ERRED IN GRANTING SUMMARY JUDGMENT.

"II. THE COMMON PLEAS COURT ERRED IN DENYING PLAINTIFFS' LEAVE TO FILE THEIR AFFIDAVITS OPPOSING THE SUMMARY JUDGMENT MOTION.

"III. THE COMMON PLEAS COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE THE EMPLOYEE HANDBOOK REQUIRED GOOD CAUSE FOR DISCHARGE.

"IV. THE COMMON PLEAS COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE EVIDENCE OF IMPLIED CONTRACT IN AT-WILL EMPLOYMENT PRESENTS A JURY QUESTION.

"V. THE COMMON PLEAS COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE EVIDENCE OF PROMISSORY ESTOPPEL IN AT-WILL EMPLOYMENT PRESENTS A JURY QUESTION.

"VI. THE COMMON PLEAS COURT ERRED BY APPLYING ITS INTERPRETATION OF THE LANGUAGE OF THE EMPLOYMENT APPLICATION AND ITS OPINION OF APPELLANTS' UNDERSTANDING OF THE LANGUAGE IN REACHING SUMMARY JUDGMENT.

"VII. THE COMMON PLEAS COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE THE APPELLEE FAILED TO COMPLY WITH DISCOVERY."

We note that employees have not complied with our Local App. R. 4(D) concerning appeals from summary judgments. Failure to comply with the rule is failure to prosecute the appeal for which dismissal may be entered *sua sponte.* We prefer, however, to address this cause on its merits.

I

Civ. R. 56(C) states in pertinent part:

"... Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law... A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor... "

A trial court should not enter summary judgment if it appears that a material fact is in genuine dispute. Neither should summary judgment be granted if, construing the allegations most favorably towards the nonmovant, reasonable minds could draw different conclusions from the undisputed facts, *Duke v. Sanymetal Products, Inc.* (1972), 31 Ohio App. 2d 78. A trial court may not resolve ambiguities in documents or testimony, *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St. 3d 321.

In the case of *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, our Supreme Court held:

"1. Unless otherwise agreed, either party to an oral employment-at-will employment agreement may terminate the employment relationship for any reason which is not contrary to law.

"2. The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge.

"3. The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by is employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee."

Syllabus by the court.

In the case of *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St. 3d 131, the Supreme Court found summary judgment inappropriate given the appellant's allegations in that case that her employer had orally promised her job security and an opportunity to advance. The Supreme Court held:

"Standing alone, praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship. A demonstration of detrimental reliance on specific promises of job security can create an exception to the employment-at-will doctrine."

Syllabus, para. 3, by the court (citations omitted).

The record indicates that the employment handbook listed some 54 infractions and the penalties ford each. The handbook further provided that the list of violations is not exhaustive. The handbook also provided in part:

"Evaluation of New Employees

"Each new employee is normally evaluated during the first 30 days worked for the company. The employees [sic] supervisor may terminate the employee at any time, at his discretion, during this period if the employee fails to live up to the supervisor's expectations."

Depositions of two of the three appellants-employees were filed. Each indicates that the plant manager told them that they would only be discharged for violations of a company policy. In addition, one of the employees deposed that employer was so pleased with the quality of his work that it waived his probationary period.

We find that construing the evidence most favorably to the nonmovant, there are genuine issues of material fact regarding whether there was an oral and/or written contract of employment created by the handbook and the representations of employer's agent, and whether employees reasonably relied to their detriment. Accordingly, summary judgment was inappropriate in this cause.

The first assignment of error is sustained.

II

Employer's motion for summary judgment was filed November 1, 1989, and its affidavits and memoranda in support were filed some two weeks later. Employees contend that these documents were not timely and properly filed. Employees filed their memoranda and affidavits in opposition on the day of the hearing. The trial court refused to consider them because the rule provides they must be filed at least by the day before the hearing.

Employees now urge that counsel for employer consented to the late filing.

Civ. R. 56(F) provides the procedure to be followed when affidavits are not available within rule. Certainly the most prudent policy would have been for employees to comply with that rule.

We find that no prejudicial error occurred, because there is sufficient evidence in the record to create a jury question. The second assignment of error is overruled.

III

In their third assignment of error, employees argue that the trial court erred when it held that the employee handbook does not constitute an employment agreement, citing *Cohen & Co. v. Messina* (1985), 24 Ohio App. 3d 22.

Employer rightly asserts that the mere existence of a handbook does not automatically create an employment agreement out of an at will employment situation. However, "[e]mployee handbooks, company policy, and oral representations have been recognized in some situations as comprising components of the employment contract." *Mers, supra,* at 104 (citations omitted).

Where, as here, employees present evidence that, if believed by the trier of fact, demonstrate oral representations in addition to the handbook, a factual issue is Presented for the jury.

The third assignment of error is sustained.

IV & V

The referee's report, as adopted by the trial court as its opinion, states:

"The factual evidence offered by plaintiffs in addition to the handbook itself, are the

characterizations of (employer's plant manager] Mr. Blakenship's orientation remarks when he showed plaintiffs the company handbook as new employees. These remarks scarcely constitute evidence of an offer made with contractual content or of the meeting of the minds necessary to the formation of the contract and continuing employment."

Filed January 16, 1990, at 9.

Employees argue that when the trial court drew this conclusion it usurped the role of the jury. We agree, *Duke v. Sanymetal, supra.* A jury could conclude that these statements were oral promises or statements of company policy that, taken in conjunction with the written statements in the handbook, form an employment contract, *Mers, supra.*

Regarding employees' claim of promissory estoppel, the referee's report found, in part, that there was no evidence that employer had difficulty in attracting satisfactory employees, and therefore needed to offer inducements of permanent employment. Whether employer *had* to make these offers, or was not forced to make them, but determined that it was better business sense to do so, or even had made the offers for frivolous reasons is not the test of whether the offers were in fact made. Furthermore, the trial court should not analyze this evidence because to do so implies weighing the credibility of evidence.

The fourth and fifth assignments of error are sustained.

## VI

In the sixth assignment of error, employees argue that the trial court erred in construing the disclaimer language contained in the employment application as being dispositive of the issue of whether the employment was terminable at-will.

We find that the jury could believe that employer's oral representations negated the effect of this disclaimer. In the alternative, the jury could conclude that this employment began as an at-will employment, but because of the oral representations in the course of dealings with the employees, the employment later became contractual or quasi-contractual. As Justice Sweeney pointed out in *Kelly v. Georgia-Pacific Corp.* (1989), 46 Ohio St. 3d 134:

"At the heart of the *Mers* opinion is the recognition that the history of relations between an employer and employee may give rise to contractual or quasi-contractual obligations despite the fact that such relations arose in an employment-at-will context." *Kelly,* at 139.

The sixth assignment of error is sustained.

## VII

In their final assignment of error, employees urge that the trial court should have overruled the motion for summary judgment or have postponed ruling on it until discovery was completed. Specifically, they had filed interrogatories and requests for production, and were not satisfied with the completeness of employer's responses. The trial court determined that employees had not demonstrated that they were prejudiced in any way. Employees maintain that because they do not know what the discovery information may have been, they cannot know specifically how they have been disadvantaged.

The record demonstrates that employees never moved the trial court to compel discovery pursuant to Civ. R. 37. Neither did they seek a continuance of the motion for summary judgment hearing pursuant to Civ. R. 56(F). We find that employees cannot complain that they were prejudiced by lack of discovery when they failed to pursue their discovery requests in the trial court, *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App. 3d 78; *Grange Mutual Casualty Co. v. State Automobile Mutual Ins. Co.* (1983), 13 Ohio App. 3d 217.

The seventh assignment of error is overruled.

For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is reversed, and the cause is remanded to that court for further proceedings in accord with law and not inconsistent with this opinion.

Pursuant to *North v. Pennsylvania Railway Co.* (1969), 9 Ohio St. 2d 169, syllabus para. 3, we certify the following issues of material fact to be in genuine dispute:

1. Was there an oral and/or written contract of employment based upon the employee handbook, employer's agent's oral statements, and any course of dealings between employer and employees?

2. Was it foreseeable to employer that employees would rely upon the oral and/or written contract?

3. Did employees rely to their detriment upon the oral and/or written contract?

4. Did employees violate one of the company rules justifying immediate discharge?

5. Were employees damaged and in what amount by employer's actions?

GWIN, J., concurs.

MILLIGAN, P.J., concurs in part and dissents in part.

As a threshold issue, we must determine the relationship between the parties. To argue that the employee was not discharged for just cause begs the question. That issue emerges only if the employee has a contract of employment, or as stated in the negative, only if he is not an employee-at-will.

I

Appellants argue that once the employer gives a reason for discharging an employee, the employer may not assert that the employment was terminable at will. Appellant cites no legal support for this argument.

Ohio continues to recognize the doctrine of employment-at-will. See, e.g., *Henkel v. Educ. Research Council* (1976), 45 Ohio St. 2d 249, 344 N.E. 2d 118; *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 483 N.E.2d 150; *Kelly v. Georgia-Pacific Corp.* (1989), 46 Ohio St. 3d 134, 545 N.E.2d 1244; *Karnes v. Doctors Hospital* (1990), 51 Ohio St. 3d 139, 555 N.E.2d 280. I decline to hold that merely by explaining to the employee the reasons for discharge, the employer waives his right to assert the true nature of the employment relationship and is required to prove just cause for the termination. Such a rule would put an employer in an employment-at-will situation in a catch-22 situation: either explain to the employee why he is being terminated and prepare to prove just cause for the termination, or fire the employee without discussion and protect the right to assert employment-at-will. The first result in effect abolishes the employment-at-will doctrine; the second undercuts the ability of employers and employees to communicate regarding problems in the employment relationship. I would decline to take such an extreme position.

The first assignment of error should be overruled.

II

Appellants assert that the court erred in denying leave to file affidavits on the day of the summary judgment hearing. Affidavits in opposition to a motion must be filed at least one day before hearing on the motion. Civ. R. 6(D), Civ. R. 56(C).

Appellants' counsel offers two reasons for the delay: (1) he understood that counsel for appellee would not object to late filing, and (2) appellee filed its memorandum supporting summary judgment and affidavits more than 1 1/2 months late. This does not change the fact that appellants failed to obtain leave of the *court* to file their affidavits late. Appellants were given the full statutory time period in which to file such affidavits, measured from the day appellee filed its supporting memorandum and affidavits. Appellants had ample time in which to prepare and file such affidavits.

Appellants also argue that the court erred in failing to grant leave to file under Civ. R. 56(F), because no harm was caused by such filing.

"Should it appear from the affidavits of a party opposing the motion for summary judgment that he cannot for sufficient reasons stated present by affidavit facts essential to justify his opposition, the court may... order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." Civ. R. 56(F).

In an affidavit filed with the court, counsel for appellants asserted that it was his understanding that counsel for appellee would not object to late filing. Appellants' counsel concedes in his brief that if he thought appellee's counsel would have objected, he would have timely filed such affidavits. The trial court did not err in failing to find this to be a sufficient reason for delay.

While all appellants claim prejudice by denial of leave to file, the ruling on this issue is irrelevant as to appellants Lambert and Duron, based on a finding of sufficient evidence in their depositions to create a jury question. As to appellant Mohr, overruling this assignment would affirm the summary judgment as to him, as absent this affidavit, there is no evidence in the record before the court as to representations made to him sufficient to create a jury question.

The second assignment of error should be overruled.

III, IV, V

Appellants' third assignment of error asserts that the employee handbook requires good cause for discharge. The employee handbook is one component to consider to determine if the employer has altered the employment-at-will relationship. *Mers*, 19 Ohio St. 3d 100, at syllabus 2. We therefore address this assignment in conjunction with appellants' assertions that cause for discharge was required by implied contract and promissory estoppel.

"The facts and circumstances surrounding an oral employment-at-will agreement, includ-

ing the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge." *Mers*, 19 Ohio St. 3d 100, at syllabus 2.[1]

In *Mers* the Ohio Supreme Court also recognized an exception to the employment-at-will doctrine based on promissory estoppel. The test in such cases is whether the employer should reasonably have expected its representation to be relied upon by the employee, and whether the expected action or forbearance actually resulted and was detrimental to the employee. *Id.* at syllabus 3; *Kelly v. Georgia-Pacific Corp.* 24, 46 Ohio St. 3d at 139. The reasonableness of such reliance is a question for the jury. *Kelly* at 140.

Appellants each signed an application which provided that his employment could be terminated at any time without prior notice. The employee handbook provided that during the first 30 days of employment, the employee could be terminated at any time in the supervisor's discretion. The handbook listed 54 infractions and the penalties for each, including possible discharge.

Appellant Robert Duron testified in his deposition that the plant supervisor told him:

"... The only way we would fire you is if you did something wrong, if you was sleeping on the job, drinking on the job, carrying a firearm on the premises, drinking, smoking pot, or just flat out, you know did something wrong, you know, real damaging to the company. Other than that, you can't get fired here."

Duron Deposition, p. 40.

"After my -- well after the first night I did some dies for them and they saw the quality of it, and he said, Forget your probationary period, you're a permanent worker here." Duron Deposition, p. 42.

He further testified that based on all the information he received from his supervisors at Lexington, he believed that he would have to violate one of the rules in the handbook to be fired. Duron Deposition at p. 47.

Appellant Kenneth Lambert testified as follows regarding his discussion with the plant supervisor about the employee handbook:

"He said it was very important, read it and those were the reasons that we would be either fired or we would have reprimand put on us or disciplinary actions." Lambert Deposition, p. 15.

"From this rule book, I was told the only way I could be fired is that if one of these rules had been violated." Lambert Deposition, p. 48.

Based on this testimony, I cannot say that by construing the evidence in the light most favorable to appellants, reasonable minds could only come to one conclusion, that being adverse to the appellants. Considering all of the foregoing evidence, a jury question was created as to whether the employer made sufficient representations to alter the at-will relationship.

As to appellants' assertion of promissory estoppel, I find that reasonable minds could find that the employer should reasonably have expected the employees to rely on such representations of continuing employment absent a specified infraction. See *Kelly, supra.*

As to evidence relating to reliance on the employer's representations, Appellant Zambert testified that he bought a car two days before his job terminated. Lambert Deposition at 43, 47. While he initially stated that he would have taken the job regardless of any representations regarding discharge, he later stated that he wasn't sure if he would have taken the Job or not because the handbook and representations were a relevant part of his hiring. Lambert Deposition at 54-57. Appellant Robert Duron was self-employed in maintenance work before working for Lexington; he ended this business when he went to Lexington because he needed a steady income. Duron Deposition at 9-10. When construed in a light most favorable to appellants, this is sufficient evidence relating to detrimental reliance to create a jury question.

The third, fourth, and fifth assignments of error should be sustained as to appellants Duron and Lambert. Because there is no evidence properly before the court as to representations to appellant Mohr (see assignment of error II), and as the employee handbook standing alone does not create an employment contract out of the employment-at-will relationship, these assignments of error should be overruled as to appellant Mohr.

VI

The employment application stated in pertinent part:

"Further I understand and agree that my employment is for no definite period and may, regardless of the date of payment of my wages and salary, be terminated at any time without any previous notice."

Appellant argues that the court erred in taking this language to mean that appellants agreed that their employment could be terminated without cause. The language of this application is plain and unambiguous on its face, and we find that the trial court correctly interpreted the application.[2]

The sixth assignment of error should be overruled.

### VII

I concur in the majority opinion as to assignment of error VII.

For the above-stated reasons, I would reverse the summary judgment as to appellants Lambert and Duron, and affirm the summary judgment as to appellant Mohr.

---

[1] *Mers* has also been applied by the Ohio Supreme Court where the employee signed a statement specifying that the employment could be terminated without cause. See *Karnes v. Doctors Hospital* (1990), 51 Ohio St. 3d 139.

[2] The interpretation of this agreement by the plain language does not prevent a finding that the employer's representations could have altered the effect of this provision, or that the employment-at-will relationship could have later been altered by such representations. See *Mers, Kelly,* and *Karnes, supra.*