KELLY, APPELLANT, *v.* GEORGIA-PACIFIC CORPORATION, APPELLEE.

[Cite as Kelly *v.* Georgia-Pacific Corp. (1989), 46 Ohio St. 3d 134.]

(No. 88-1167—Submitted May 9, 1989—Decided October 25, 1989.)

*Nicely & Wagner, Judith A. Nicely* and *Katherine C. Smith,* for appellant.
*Denlinger, Rosenthal & Greenberg, Daniel G. Rosenthal* and *Mark E. Lutz,* for appellee.

SWEENEY, J.

## I

It is the contention of appellee that appellant is foreclosed from pursuing his breach of contract and negligent termination claims in state court because the facts underlying the claims were determined in the federal proceeding. Appellee therefore relies on the doctrine of collateral estoppel. Collateral estoppel is often termed "issue preclusion." Consequently, in order for an issue to be precluded in subsequent litigation involving a different cause of action, the *issue* must have actually been decided in the prior proceeding. See *Taylor* v. *Monroe* (1952), 158 Ohio St. 266, 49 O.O. 118, 109 N.E. 2d 271. It is this attribute of the doctrine of collateral estoppel which differentiates it from the related concept of *res judicata.* Thus, in *State, ex rel. Ohio Water Service Co.,* v. *Mahoning Valley Sanitary Dist.* (1959), 169 Ohio St. 31, 34, 8 O.O. 2d 1, 3, 157 N.E. 2d 116, 118, it was observed:

"It would appear that the essential difference between *res judicata* and estoppel by judgment is that in the former there must be an exact identity in parties *and* in causes of action, whereas the doctrine of estoppel by judgment may apply where the cause of action in the subsequent suit is different. In the former situation, the preceding action is dispositive not only of issues which were actually litigated but also of those which could have been litigated. *Covington & Cincinnati Bridge Co.* v. *Sargent,* 27 Ohio St., 233; *Roby* v. *Rainsberger,* 27 Ohio St., 674; *Petersine* v. *Thomas,* 28 Ohio St., 596; *Avery* v. *Vansickle,* 35 Ohio St., 270; *Raymond* v. *Ross,* 40 Ohio St., 343; *Strangward* v. *American Brass Bedstead Co.,* 82 Ohio St., 121, 91 N.E., 988; *Rothman* v. *Engel,* 97 Ohio St., 77, 119 N.E., 250; *Clark* v. *Baranowski,* 111 Ohio St., 436, 145 N.E., 760; *Charles A. Burton, Inc.,* v. *Durkee,* 162 Ohio St., 433, 123 N.E. (2d), 432. See, also, *Dunham* v. *Board of Education,* 61 Ohio Law Abs., 525, 99 N.E. (2d), 183 (dismissed for want of debatable constitutional question, 155 Ohio St., 594, 99 N.E. [2d], 658).

"In the case of estoppel by judgment, only those issues actually litigated and determined in the preceding action are foreclosed so far as subsequent determination is concerned." (Emphasis *sic.*) See, also, *Whitehead* v. *General Tel. Co.* (1969), 20 Ohio St. 2d 108, 112, 49 O.O. 2d 435, 437, 254 N.E. 2d 10, 13.

A review of the federal district court proceeding reveals that any decision relative to the facts that form the basis of its holding was considered in the context of federal law (*i.e.,* ADEA and ERISA). Thus, in considering appellant's age discrimination suit under ADEA the district court set forth the test applied to such suits including the respective burden of proof for each party. While appellee maintains that the federal court found that appellant was discharged for legitimate business reasons, this finding was relevant only with respect to rebutting appellant's

*prima facie* showing of age discrimination. A demonstration of the context in which the evidence was considered may be derived from a review of the district court decision. The issue is presented as follows:

"* * * [T]he plaintiff now relies solely on the defendant's failure to transfer Kelly to another sales position within the company as the basis for his age discrimination claim."

In rejecting appellant's claim that this company policy amounted to *age discrimination*, the court later remarked:

"* * * [T]he plaintiff has conceded that his case is not based on a pattern and practice of discrimination, but rather on disparate treatment by the defendant; thus, the plaintiff's reliance on statistical evidence is misplaced."

Consequently, "disparate treatment" was not relevant in the federal proceeding in demonstrating age discrimination but may be extremely relevant to appellant's state tort and contract claims. Similar determinations relative to particular facts *in the context of an age discrimination suit* were made later in the opinion. Moreover, the court found that termination of appellant just prior to the vesting of his pension benefits was not evidence of *age discrimination*. Any doubt relative to the issues decided may be resolved by reference to the following observation of the court:

"The Court is guided by one other consideration. In a series of recent decisions in age discrimination cases, the Sixth Circuit has looked carefully at the type of circumstantial evidence sufficient to establish inferences of discrimination in violation of ADEA."

That its consideration of the facts was limited to their application to a federal age discrimination claim was clearly expressed by the district court in its order overruling appellant's mo-

tion for relief from summary judgment. The court's opinion is unambiguous in limiting its consideration of the evidence to the relevance of such evidence to the federal claim:

"The Court concludes that although there is some evidence in the record that the plaintiff was doing an acceptable job as a sales person with Georgia-Pacific, that fact is probative only of the plaintiff's qualifications for the position. Even assuming that Kelly was performing adequately as a sales person, *that fact is insufficient to demonstrate that the defendant's proffered legitimate business reason for terminating the plaintiff was simply a pretext for age discrimination.*" (Emphasis added.)

Later, the court specifically acknowledged that its decision on the facts considered was limited to the particular legal context (federal law) in which it was presented:

"The Court notes that the company gave Kelly only two weeks notice that it intended to eliminate the Ohio sales region, and that it intended to eliminate Kelly's job. Arguably, the company might have discharged the plaintiff in a more fair manner, but lack of fairness does not in itself give rise to an inference of discrimination."

This same lack of fairness may nevertheless give rise to a state claim under identical facts. Thus, the decision on the federal claims will not result in issue preclusion in a subsequent state proceeding.

We therefore conclude that where a determination in a prior federal action was not essential to the judgment obtained therein, collateral estoppel will not foreclose consideration of the issue in a subsequent state proceeding involving a different claim for relief. See Comment *j* to Section 27 of 1 Restatement of the Law 2d, Judgments (1982) 260-261.

## II

Appellee maintains that, irrespective of our resolution of the collateral estoppel issue, the decision of the common pleas court granting its motion for summary judgment should be affirmed. Summary judgment is appropriate only when there exists "no genuine issue as to any material fact." Civ. R. 56(C). In the case at bar, appellant contends that he was the subject of company representations that led him to believe he would enjoy continued employment. He further contends that, once terminated, he received disparate treatment compared to that of other employees. In *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150, this court altered the employment-at-will doctrine such as to permit jury consideration of factors which may give rise to additional obligations on the part of an employer.

We observed in *Mers*:

" '[T]he character of the employment, custom, the course of dealing between the parties, or other fact which may throw light upon the question' can be considered by the jury in order to determine the parties' intent. *Bascom* v. *Shillito* (1882), 37 Ohio St. 431, 434. Employee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of the employment contract. *E.g., Hedrick* v. *Center for Comprehensive Alcoholism Treatment* (1982), 7 Ohio App. 3d 211; *Helle* v. *Landmark, Inc.* (1984), 15 Ohio App. 3d 1." *Id.* at 104, 19 OBR at 264, 483 N.E. 2d at 154.

At the heart of the *Mers* opinion is the recognition that the history of relations between an employer and employee may give rise to contractual or quasi-contractual obligations despite the fact that such relations arose in an employment-at-will context. Accordingly, the facts and circumstances surrounding an oral employment-at-will relationship, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the explicit and implicit terms concerning discharge. See *id.* at paragraph two of the syllabus.

Further, we stated in *Mers* that any representations by the company which may give rise to obligations over and above those present in an employment-at-will situation would be viewed in reference to their reasonable effect on the employee:

"In our view, the employer's representation is to be determined by what the 'promisor should reasonably expect' the *employee* to believe the promise means if expected action or forbearance results. Consequently, we find that the meaning of the Dispatch's promise, and whether the acts flowing from it were reasonable, are questions of fact for jury determination." (Emphasis *sic.*) *Id.* at 105, 19 OBR at 265, 483 N.E. 2d at 154-155.

Thus, the doctrine of promissory estoppel is applicable and binding to employment-at-will relationships when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.

The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee. See *id.* at paragraph three of the syllabus.

.

In the case *sub judice*, appellant claims the representations made to him in performance reviews, discussions regarding the employee manual, and correspondence from management officials could have been reasonably interpreted by the company as giving him the impression that he had an implied contract of continued employment (conditional upon his acceptable job performance) or inducing him to rely on the representations such as to preclude his search for alternative employment. Certainly, Vilmur's 1980 communication to management, if believed by a jury, is competent evidence that management was aware that they had given Kelly the impression that he would be treated fairly.

The determination of this issue cannot be resolved on a summary judgment motion. The reasonableness of such reliance, as noted in *Mers,* is a fact question for the jury.

Similarly, the question regarding disparate treatment is a triable issue. If the statements in the Georgia-Pacific Operating Policy Manual are perceived as roughly comparable to the assurances the Dispatch gave Mers regarding continued employment following a "favorable resolution" of his criminal case, there remains the question as to whether appellant's treatment (discharge) complied with appellee's policy of treating employees in a comparable fashion when in comparable positions. Appellant maintains that other employees were afforded other opportunities (transfer, outplacement counseling, reinstatement following recall and the ability to purchase benefits) and given warning of their imminent termination. Comparison of the various employment situations and their similarity or dissimilarity appears to be a jury function.

The judgment of the court of appeals is therefore reversed and the cause is remanded for trial on the merits.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, J., concurs.

H. BROWN and RESNICK, JJ., concur in the syllabus and judgment only.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. This case, while seemingly complex, should turn on a single narrow issue. That issue is whether the same parties who litigated different causes of action in federal court wherein particular issues of fact were necessarily adjudicated are precluded from relitigating those same issues of fact in state court under different legal theories.

I

It is clear to me that the appellant is barred by the doctrine of collateral estoppel from bringing his subsequent suit in state court because the particular issues of fact raised in this case have been "* * * passed upon and determined by a court of competent jurisdiction." *Norwood* v. *McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E. 2d 67, paragraph three of the syllabus. For this and the reasons that follow, I must respectfully dissent from the majority's holding that somehow the federal district court's prior determination of the salient points involved in this controversy will not bar appellant from raising them in these proceedings.

Appellant Kelly originally brought a variety of actions in the United States District Court for the Northern District of Ohio, Eastern Division, based on federal claims premised upon

alleged age-discrimination and pension-fund violations. Georgia-Pacific was granted summary judgment on these claims and the court's ruling was affirmed on appeal. Kelly also asserted pendent state claims based on tort and contract causes of action under state law. A handicap discrimination claim was voluntarily dismissed by Kelly and the pendent state claims were ultimately dismissed, without prejudice, by the federal tribunal.

Kelly then sued in state court on contract claims of breach of the covenant of good faith and fair dealing, breach of express and implied contract, and promissory estoppel, and on tort claims of negligent termination and defamation. Kelly dismissed the defamation claim and the trial court found that Ohio does not recognize a cause of action for negligent termination and thus dismissed that count.

The remaining counts arise out of Kelly's contention that defendant's policies and behavior have altered Kelly's employee-at-will status. The trial court granted defendant's motion for summary judgment regarding these claims, since essential facts necessary to establish the thrust of Kelly's state claims had already been determined against him in the federal litigation. In other words, issue preclusion collaterally estopped Kelly from litigating certain facts, and other unrebutted facts entitled Georgia-Pacific to summary judgment.

The general definition of the doctrine of collateral estoppel and its proper application are well-settled by this court. In the seminal case of *Norwood* v. *McDonald, supra* (approved and followed in *Whitehead* v. *General Tel. Co.* [1969], 20 Ohio St. 2d 108, 49 O.O. 2d 435, 254 N.E. 2d 10, paragraph two of the syllabus), this court held:

"A point or a fact which was ac-tually and directly at issue in a former action and was there passed upon and determined by a court of competent jurisdiction may not be drawn in question in any future action between the same parties or their privies, *whether the cause of action in the two actions be identical or different.*" (Emphasis added.) *Norwood, supra,* at paragraph three of the syllabus. Thus, a "* * * prior judgment estops a party, or a person in privity with him, from subsequently relitigating the identical issue raised in the prior action." *Whitehead, supra,* at paragraph two of the syllabus. See, also, *Goodson* v. *McDonough Power Equip., Inc.* (1983), 2 Ohio St. 3d 193, 2 OBR 732, 443 N.E. 2d 978, paragraph one of the syllabus. As *Whitehead* explains: "The second aspect of the doctrine of *res judicata* is 'collateral estoppel.' While the merger and bar aspects of *res judicata* have the effect of precluding a plaintiff from relitigating the same cause of action against the same defendant, the collateral estoppel aspect precludes the relitigation, in a second action, of *an issue* that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action. Restatement of the Law, Judgments, Section 45, Comment (c), and Section 68(2); *Cromwell* v. *County of Sac* (1876), 94 U.S. 351. In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." (Emphasis *sic*). *Id.* at 112, 49 O.O. 2d at 437-438, 254 N.E. 2d at 13 (quoted in *Goodson, supra,* at 195, 2 OBR at 734, 443 N.E. 2d at 981).

As an incident to its summary judgment decision, the federal court necessarily had to examine all the facts and circumstances surrounding Kelly's claims against Georgia-Pacific in order

to find any inference of age discrimination. The court was required to and did review the employment policies of defendant and specifically addressed how the company dealt with terminated employees. In order to sustain the summary judgment, the court in its twenty-page memorandum and six-page order essentially found it to be unrebutted that *Georgia-Pacific had a legitimate business reason to eliminate plaintiff Kelly's sales territory and his position and found further that the language from the operating policy manual upon which plaintiff claimed to have relied was too general to constitute an alteration of plaintiff's employee-at-will status.* I must point out that the majority opinion simply misstates the scope of the federal court's factual determination. The majority mistakenly suggests that the district court limited itself to consideration of only those facts related to the context of a federal age-discrimination claim and thus resolved the issues noted above.

It is well-settled that a state supreme court, and not a federal district court, is the final arbiter of questions of purely state law. Thus, it is beyond cavil that it is within the province of this court and the courts below to determine if a point or issue involving the laws of the state of Ohio has been actually litigated and finally determined. The trial court clearly had the right and duty to apply the collateral estoppel doctrine in this case.

## II

I would agree with the majority's discussion of *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150, approved and followed in *Helmick* v. *Cincinnati Word Processing, Inc.* (1989), 45 Ohio St. 3d 131, 543 N.E. 2d 1212, recognizing that the doctrine of promissory estoppel is applicable to and binding upon oral employment-at-will agreements where detrimental reliance is apparent. I also agree that "* * * [t]he test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee, and, if so, whether the expected action or forbearance *actually resulted* and was detrimental to the employee." (Emphasis added.) *Mers, supra,* at paragraph three of the syllabus.

However, when discussing the preclusion of the relitigation of a point of law or fact, it should be remembered that under a claim of promissory estoppel involving an oral employment-at-will agreement, the trier of fact is to look at *all* the facts and circumstances of the case. These facts and circumstances include "the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question." *Id.* at paragraph two of the syllabus.

The plaintiff in his deposition concedes that he *never even saw the employment policy manual,* neither the 1980 version nor the 1983 version with the disclaimer that all employee relationships are on an at-will basis, until after he had left Georgia-Pacific. Further, Georgia-Pacific did not make any representations about job security to plaintiff. Thus, plaintiff could not have relied upon the terms in the manual.

The district court found that the language in the manual was too general to create a binding policy; and that even if statements in the manual constituted a transfer policy, there was no policy mandating transfer between divisions, and that defendant corporation had made a good faith effort to transfer the plaintiff to another suitable job. Indeed, all the above issues of fact were litigated and con-

clusively determined in the federal action in favor of Georgia-Pacific. It is difficult to see how this case can survive a directed verdict in light of appellant's specific admission that he in no way relied on the manual to his detriment.

I am puzzled by the majority's seeming lack of awareness of this established doctrine. I say this because there are strong policy justifications underlying the use of the doctrine of collateral estoppel. One of the chief justifications for the doctrine is to protect the rights of the defendant by preventing the plaintiff, who is allowed broad latitude in choosing the time and forum of the action, from being able to relitigate issues in yet another forum if unsuccessful in his first action. Stated another way, "* * * [t]he rule recognizes that every litigant should be allowed to choose when and where to bring his own claims and that plaintiff should not have the advantage of compelling the defendant to bring claims prematurely." Friedenthal, Kane & Miller, Civil Procedure (1985), Section 14.6, at 637.

A second equally important justification is that reasonable application of collateral estoppel can save considerable judicial resources, since issues or points of law, once conclusively determined, need not be again determined. Relitigating issues already determined takes up the court's valuable time that could better be spent resolving legal concerns of litigants who are before the court for the first time. *Id.* at 628, 637. Indeed, the United States Supreme Court has noted that use of the doctrine of collateral estoppel promotes judicial economy. See *Parklane Hosiery Co.* v. *Shore* (1979), 439 U.S. 322, 329. Thus, preserving the rights of defendants and promoting judicial economy are both major policy justifications for the

use of collateral estoppel, a doctrine that clearly should bar plaintiff's claims in the case before us.

Balanced against these two significant policy concerns are two mandates with respect to fundamental fairness in the application of collateral estoppel. First, the plaintiff must have had an opportunity to fully, fairly, and vigorously litigate an issue in the first action. *Goodson, supra,* at 198, 2 OBR at 737, 443 N.E. 2d at 983. Second, the plaintiff must have been able to foresee "* * * that the issue would be subsequently utilized collaterally." *Id.* at 201, 2 OBR at 739, 443 N.E. 2d at 986.

It is perfectly apparent that plaintiff was given a more than adequate opportunity to fully, fairly, and vigorously litigate the issues. Plaintiff was fully represented by counsel at all stages of the first proceeding. Plaintiff was afforded adequate procedural due process. Plaintiff zealously explored a variety of alternative causes of action, covering the gamut of factual issues that could be presented in such contract or tort actions.

It is equally apparent to me that plaintiff should have foreseen that these issues which were fully and finally adjudicated in his federal action would serve to bar him from relitigating these same issues in the state action. Obviously, the federal court would have had to and did make comprehensive factual determinations in order to rule on plaintiff's federal claims.

For the reasons aforesaid I agree with the trial court and the court of appeals that appellant cannot challenge the prior determination regarding the general language of the manual in a state cause of action. The summary judgment granted to Georgia-Pacific is well grounded on unrebutted facts in plaintiff's deposition that preclude him

144

from varying his status as an employee at will.

Accordingly, I would affirm the decision of the court of appeals, a decision I feel to be in complete harmony with our holding in *Mers* v. *Dispatch Printing Co., supra.*

MOYER, C.J., and HOLMES, J., concur in the foregoing dissenting opinion.