PATRICK, Appellant,

v.

PAINESVILLE COMMERCIAL PROPERTIES, INC., Appellee.

[Cite as *Patrick v. Painesville Commercial Properties, Inc.* (1994), 99 Ohio App.3d 360.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 93–L–206.

Decided Nov. 28, 1994.

Judgment reversed in part and cause remanded.

*Patrick J. Perotti,* for appellant.

*Timothy P. Cannon,* for appellee.

EDWARD J. MAHONEY, Judge.

This accelerated calendar appeal arises out of the Lake County Common Pleas Court, where the court entered summary judgment in favor of appellee, Painesville Commercial Properties, Inc.

Appellant, Robert Patrick, who is sixty-two years of age, was employed for several years with Dairymens Company as a full-time heating, ventilation, and air conditioning ("HVAC") maintenance person. This was a secure, full-time position that paid approximately $28,000 per year together with full medical benefits.

In April 1992, appellee ran a newspaper advertisement for a maintenance person with HVAC experience. This advertisement piqued appellant's curiosity because the job was in Painesville, which was much closer to his home in Geneva than his job at Dairymens, which was in downtown Cleveland. Therefore, appellant sent his resume to appellee.

Appellee called appellant for an interview. Appellee was at this time aware that appellant currently had a full-time position elsewhere. During this interview, appellee offered appellant the job, but at a lesser salary than his position at Dairymens. Appellant initially accepted, but after returning home that evening and thinking more about it, he decided that he could not afford to give up a secure full-time job or to take a salary cut, despite the shorter drive. Thus, he notified appellee's representative, Mrs. Lori Keener, of this decision in person the next day.

Sometime during this return visit with appellee, appellant explained to Keener that because of the long drive associated with his position at Dairymens, he would probably retire at age sixty-five, although that decision was not definite. Keener responded by asking appellant how long he would be willing to work if he came to work with appellee, to which appellant responded, "until age 72." She then responded something to the effect of either "fine," or "that's what we want." [1] Keener then countered by offering appellant the position at a higher salary level than originally offered with full medical benefits. Appellant accepted and quit his position at Dairymens.

In July 1992, less than three months later, appellee terminated appellant's employment and returned to hiring the work out on a contract basis. On October 7, 1992, appellant filed a complaint against appellee, alleging nine counts arising from his discharge from appellee's employ. On October 8, 1993, appellee filed a motion for summary judgment. On November 23, 1993, appellant filed his brief in opposition to appellee's motion. On December 1, 1993, appellee filed its reply brief in response to appellant' brief in opposition.

On December 8, 1993, the court, without explanation, granted appellee's motion. Appellant has timely appealed and asserts the following assignments of error:

"1. The trial court erred in granting defendant's motion for summary judgment on the implied contract claim under *Mers v. Dispatch Printing*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985), and *Kelly v. George–Pacific Corp.*, 46 Ohio St.3d 134, 545 N.E.2d 1244 (1989).

"2. The trial court erred in granting summary judgment on plaintiff's promissory estoppel claim under *Mers v. Dispatch Printing*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985), and *Kelly v. Georgia–Pacific Corp.*, 46 Ohio St.3d 134, 545 N.E.2d 1244 (1989).

---

1. In his deposition, appellant said Keener said "fine," whereas in his affidavit he swore she said "that's what we want."

"3. The trial court erred in granting summary judgment against plaintiff's age discrimination claim."

The issues before us in the first and second assignments are whether the trial court properly granted appellee's motion for summary judgment. Crucial to this determination is whether there were questions of fact as to the existence of certain exceptions to the doctrine of employment-at-will.

"Summary judgment is appropriate where the movant demonstrates: (1) there is no genuine issue as to material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach but one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in its favor." *Wooster v. Graines* (1990), 52 Ohio St.3d 180, 184, 556 N.E.2d 1163, 1167.

Furthermore, "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1990), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

■ Ohio has long recognized the doctrine of employment-at-will. An oral employment agreement of indefinite duration is presumed to be terminable at will for any reason not contrary to law. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 103, 19 OBR 261, 263, 483 N.E.2d 150, 153–154. However, in *Mers,* the Supreme Court of Ohio altered the employment-at-will doctrine so as to allow jury consideration of factors which may give rise to additional obligations. Specifically, *Mers* recognized implied contract and promissory estoppel as exceptions to the employment-at-will doctrine. *Id.* at 103–104, 19 OBR at 264, 483 N.E.2d at 153–154.

With respect to implied contract:

"The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge." *Id.* at paragraph two of the syllabus.

" 'Items such as employee handbooks, company policy or oral representations, however, *will not* serve to alter the terms for discharge from the general at-will situation of discharge for any reason unless the parties have a *'meeting of the minds'* that said items are to be considered valid contracts altering the terms for discharge.' " (Emphasis *sic.*) *Brandenburger v. Hilti* (1989), 52 Ohio App.3d 21, 24, 556 N.E.2d 212, 216, quoting *Turner v. SPS Technologies, Inc.* (June 4, 1989), Cuyahoga App. No. 51945, unreported, at 5.

Thus, the first question here is whether the parties intended to enter into an implied contract. Attached to appellant's brief in opposition to appellee's motion for summary judgment was his own affidavit, a transcript of a telephone conversation which took place between appellant and Keener, and a copy of appellant's complaint, which had been in appellee's possession (appellant's employment file) and which contained handwritten comments in the margins attributed to Keener.[2]

Under Count One, paragraph nine of appellant's complaint, he averred that "[appellee] responded [to appellant's decline of appellee's job offer] by raising its offer to virtually equal the Dairymens salary, *with a promise of full medical and health benefits package and secure long-term employment.*" (Emphasis added.) Beside that sentence, appellee handwrote in the margin the phrase, "dependent upon job performance being satisfactory."

Appellee argues that this handwritten comment should not be taken into consideration by the court because appellant could not have relied on the statement as constituting an implied contract terminable for cause, since it was written after the fact of appellant's employment. However, construing the evidence most favorably toward appellant, it is possible to interpret that notation to be appellee's version of the terms Keener communicated to appellant regarding his employment with appellee. Therefore, it is relevant evidence upon which the court could have relied in making its determination.

In *Brandenburger,* the plaintiff was told by his employer that "'as long as I did a good job, I would have a job.'" *Id.,* 52 Ohio App.3d at 22, 556 N.E.2d at 214. The court, in a directed verdict exercise where it was required to construe that statement most strongly in plaintiff's favor, viewed such promise as establishing an implied contract between plaintiff and his employer. Similarly, construing the evidence in the case at bar most strongly in favor of appellant, we take the position that appellee's offer of secure, long-term employment and benefits conditional upon satisfactory performance rises even above and beyond the crest of the statement in *Brandenburger* and should be viewed as creating a question of fact as to whether an implied contract existed between the parties. Accordingly, we find merit in appellant's first assignment of error.

Turning now to the doctrine of promissory estoppel, *Mers* held that a demonstration of detrimental reliance on specific promises of job security can create another exception to the doctrine of employment at will. *Id.* at paragraph

---

2. Appellee did not move to strike or otherwise object to this submission at trial. Therefore, it is precluded from attempting to object on appeal. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 70 O.O.2d 123, 322 N.E.2d 629.

three of the syllabus; *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 136, 543 N.E.2d 1212, 1217. "The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." *Mers* at paragraph three of the syllabus. Most important, "the employer's representation is to be determined by what the 'promisor should reasonably expect' the *employee* to believe the promise means if expected action or forbearance results." (Emphasis *sic.*). *Mers*, 19 Ohio St.3d at 105, 19 OBR at 265, 483 N.E.2d at 154.

In *Mers*, the employee was suspended from his job because of his arrest for the crimes of rape, kidnapping, and gross sexual imposition. He was suspended from his job "until such time as the criminal charges would be favorably resolved." *Id.*, 19 Ohio St.3d at 101, 19 OBR at 262, 483 N.E.2d at 152. The trial resulted in a hung jury, and the charges were ultimately dismissed. The court determined that whether the "favorable resolution" promise meant jury acquittal or dismissal and whether the employee's reliance upon that promise were reasonable were questions of fact to be determined by the jury. *Id.*, 19 Ohio St.3d at 105, 19 OBR at 266, 483 N.E.2d at 154.

In *Kelly v. Georgia–Pacific Corp.* (1989), 46 Ohio St.3d 134, 139–140, 545 N.E.2d 1244, 1249–1251, the court determined that certain representations made to the employee during performance reviews, discussions regarding the employee manual, and correspondence from management, created an issue of fact as to whether the employee was induced to rely on the representations so as to preclude his further job search.

In *Helmick*, the employee was interviewed prior to her employment by the defendant-employer. She was offered *"job security* and opportunities for advancement in consideration of her discontinuing her other interviews. These inducements allegedly led to [the employee's] decision not to continue job hunting." (Emphasis added.) *Id.*, 45 Ohio St.3d at 136, 543 N.E.2d at 1217. Further, once she began her new position with the defendant and began showing signs of dissatisfaction, she was dissuaded from pursuing other jobs and was told "that a career with the company was in order as long as her job performance was good." *Id.* The court acknowledged that "standing alone, praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship." *Id.*, 45 Ohio St.3d at 135–136, 543 N.E.2d at 1216. However, it determined that the foregoing discussions created a facial showing that specific promises were made upon which the employee reasonably relied to her detriment so that summary judgment was inappropriate. *Id.*, 45 Ohio St.3d at 136–137, 543 N.E.2d at 1217–1218; but, cf. *Wing*, 59 Ohio St.3d at 111, 570 N.E.2d at 1099 (promise of future opportunity to buy into the business

did not mean a promise of continued employment and could not be reasonably relied upon).

This court has also acknowledged that without "additional compelling factors constituting promissory estoppel," the fact of an employee's giving up his or her secure employment in reliance upon representations of the new employer would eliminate the doctrine of employment at will in an instance where an employee left a secure job to take a new job. *Romoser v. Amweld Bldg. Products, Inc.* (Feb. 15, 1991), Trumbull App. No. 89–T–4307, unreported, at 8.

We conclude that the case at bar contains "additional compelling factors constituting promissory estoppel" which together amount to specific promises of job security upon which appellant could have reasonably relied. Appellant is a sixty-two-year-old man who responded to appellee's advertisement in the hopes of finding something closer to his home. However, despite the importance he placed on having a shorter drive, he was afraid to give up the salary and job security he had with Dairymens. The balancing of these factors is what led appellant to initially turn down appellee's first offer. Appellee was well aware of all these factors both when it interviewed appellant and at the time he rejected its offer. In fact, appellant's affidavit and responses to appellee's interrogatories indicate that after he rejected appellee's first offer, appellee became aware that if he were to continue working at Dairymens where his commute was lengthy, he would probably retire at age sixty-five; whereas if he were to work with appellee so that his drive was shorter, assuming an acceptable salary level, he would work until age seventy-two.

Therefore, construing the evidence most favorably toward appellant, when appellee responded "that's what we want" or "fine" after appellant stated he would work until age seventy-two, appellee made a representation which it should have reasonably expected appellant to believe meant he had a long-term, secure job, and that such representation would induce action by appellant, to wit, that he would quit his job at Dairymens. Thus, we conclude that there is also a genuine issue for trial as to the doctrine of promissory estoppel. Appellant's second assignment of error is well taken.

■ In his third assignment, appellant contends that he was a victim of age discrimination, since he was allegedly replaced by someone younger. However, appellant failed to submit any evidence that he was in fact "replaced" by anyone, much less someone younger. Appellant contended in his deposition that he was replaced by Gene Wood, who was under forty years of age. However, appellee's evidence demonstrates that Wood is employed by one of the independent contractors that appellee decided to use after appellant's termination rather than to maintain an on-site permanent maintenance employee. Thus, since appellant did not submit rebuttal evidence showing that Wood was an employee of appellee,

he has not met his burden of presenting evidence demonstrating a genuine issue of material fact. *Wing,* 59 Ohio St.3d at 111, 570 N.E.2d at 1099. Appellant's third assignment of error is without merit.

Accordingly, we vacate the judgment of the trial court and remand this cause for a trial on the counts relating to causes of action for promissory estoppel and implied contract.

*Judgment reversed in part*
*and cause remanded.*

NADER, P.J., and CACIOPPO, J., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.