[Cite as *Starkey v. Am. Legion Post 401, Caledonia, Inc.*, 2010-Ohio-2166.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

KAREN L. STARKEY,                                    CASE NO. 9-09-49

   PLAINTIFF-APPELLANT,

 v.

AMERICAN LEGION POST 401,                    **O P I N I O N**
CALEDONIA, INC., ET AL.,

   DEFENDANTS-APPELLEES.

**Appeal from Marion County Common Pleas Court**
**Trial Court No. 08 CV 0099**

**Judgment Affirmed**

**Date of Decision:  May 17, 2010**

**APPEARANCES:**

   *Robert E. Wilson,* **for Appellant**

   *Matthew P. Frericks,* **for Appellee**

**SHAW, J.**

{¶1} Plaintiff-appellant Karen L. Starkey ("Karen") appeals the September 14, 2009 Judgment Entry of the Marion County Court of Common Pleas granting summary judgment in favor of defendant-appellee American Legion Post 401, Caledonia, Inc., et al ("Post 401") and dismissing Karen's claim for wrongful termination.

{¶2} This appeal arises out of the following facts. In the fall of 1999, Karen was employed as a part-time bartender at Post 401. At this time, Karen was also employed full-time at GTE of Marion where she had worked for the past 22 years. In May of 2000, Post 401's Executive Committee offered Karen the full-time position of Canteen Manager. Karen quit her job at GTE and accepted the position. As Canteen Manager, Karen worked solely under the authority of the Executive Committee.

{¶3} With the exception of a salary increase and additional job duties assigned to her in 2002, Karen's position as Canteen Manager remained the same until 2007. In August of 2007, the Commander of Post 401, Bill Sayre, received complaints from the other bartenders that Karen had become an absentee manager. As a result, some supplies were so depleted that the bartenders had to leave their shift and go into town to replenish the supplies. Despite receiving these verbal

complaints, neither Sayre nor any other member of the Executive Committee confronted Karen with these issues. The Executive Committee discussed terminating Karen as Canteen Manager during their September meeting, but deferred the decision until a subsequent meeting on October 27, 2007.

{¶4} On October 6, 2007, Sayre and a few other Post 401 members conducted a meeting based in part on the mistaken belief that a meeting was scheduled for that day. At this meeting, the decision was made to terminate Karen despite the fact that less than half of the Executive Committee members were present. The following Monday, October 8, 2007, Sayre handed Karen a letter informing her that effective October 9, 2007, her services as Canteen Manager were no longer needed and asked for her resignation. Karen complied with the request and October 8, 2007 was the last day Karen reported to work.

{¶5} Three subsequent meetings were held in October of 2007. The Executive Committee determined that the October 6th meeting, resulting in the decision to terminate Karen, was not conducted in accordance with Post 401's bylaws. The Executive Committee subsequently decided to throw out the minutes from that meeting. Shortly thereafter, Post 401 received a letter from Karen's attorney concerning her employment as Canteen Manager. At their next meeting, the Executive Committee members voted to reinstate Karen as Canteen Manager and scheduled a meeting with her.

{¶6} On November 12, 2007, Karen attended the Special Meeting of the Executive Committee where she was informed that her termination was improper and she was invited to return to her position as Canteen Manager. Karen told the Executive Committee members that she would consider returning if the Executive Committee: 1) reviewed and updated her duties as Canteen Manager; 2) completed an accounting of the Canteen's finances during her absence and; 3) wrote her a letter of apology to be posted in the club. Karen further informed the Executive Committee that once these three tasks were completed, she would then need a few days to consider her return as Canteen Manager.

{¶7} Within a few weeks, an audit of the Canteen's finances was completed. However, the remaining two conditions were never performed. Neither Karen nor Post 401 resumed formal discussions on the issue of Karen's reinstatement as Canteen Manager. On December 8, 2007, the Executive Committee held a meeting and voted to eliminate the full-time position of Canteen Manager.

{¶8} On January 31, 2008, Karen filed this suit alleging that she was wrongfully terminated from her position as Canteen Manager without just cause.[1] Specifically, the complaint alleged that the Executive Committee committed an

---

[1] We note that in the original action, Karen's complaint also named members of the Executive Committee in their individual capacity as defendants. However, at oral argument Karen's counsel conceded that summary judgment as to the individual members was appropriate, thus on appeal, we will only review the grant of summary judgment as to the entity, Post 401.

*ultra vires*[2] act in violation of its own bylaws when it held an unscheduled meeting with less than half of the Executive Committee in attendance, and voted to terminate Karen. Post 401 timely filed its answer denying Karen's allegations. In the interim, several witnesses were deposed including Karen and members of the Executive Committee who were involved with and/or had personal knowledge of the decision to terminate Karen.

{¶9} On December 10, 2008, Post 401 filed a motion for summary judgment arguing that, because no written employment contract existed, Karen was an employee at-will and Post 401 could terminate her without cause. Post 401 further argued that none of the exceptions to the employment at-will doctrine applied to this case and therefore, it was entitled to judgment as a matter of law.

{¶10} On April 7, 2009, Karen filed her response to Post 401's motion for summary judgment maintaining her position that her termination was effectuated in violation of Post 401's bylaws. Karen further contended that she was never formally terminated because the decision to release her as Canteen Manager was made at an unauthorized meeting. Karen also asserted—for the first time—in her memorandum contra to summary judgment that the Executive Committee made specific promises to her at the time of her hiring in 2000. Karen argued that these promises placed her employment relationship with Post 401 squarely into

---

[2] An act of a corporation is *ultra vires* when it is beyond the chartered powers of the corporation, and is therefore said to be void.

recognized exceptions to the employment at-will doctrine—specifically the exceptions which rest on the existence of promissory estoppel and implied contractual provisions. See *Mers v. Dispatch Printing Co*. (1985), 19 Ohio St.3d 100, 483 N.E.2d 150, paragraphs two and three of the syllabus.

{¶11} In support of this contention, Karen stated in an affidavit attached to her response to Post 401's motion for summary judgment that: 1) upon her hiring as Canteen Manager, the Executive Committee negotiated with Karen to leave her job at GTE and agreed to match the salary that she earned there; 2) the Executive Committee also gave Karen the further assurance that she would retain her job so long as she continued to fulfill her job duties.

{¶12} Notably, Karen failed to mention these promises in her earlier deposition. Furthermore, none of the Post 401 members who made the alleged promises to Karen at her hiring in 2000 were deposed. Therefore, Karen's affidavit submitted in opposition to summary judgment is the only evidence in the record regarding these alleged promises.

{¶13} On September 14, 2009, the trial court granted Post 401's motion for summary judgment finding that based on the undisputed facts none of the exceptions to at-will employment doctrine applied. Furthermore, the trial court summarily dismissed Karen's affidavit as self-serving and characterized it as an attempt to raise an issue of fact simply to oppose summary judgment.

{¶14} Karen now appeals to this Court, asserting a single assignment of error.

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN THE DEPOSITIONS AND AFFIDAVITS ALL SUPPORT THE MATERIAL FACTS TO BE LITIGATED**

{¶15} In her sole assignment of error, Karen argues that the trial court erred in granting summary judgment in favor Post 401 because genuine issues of material fact remain as to whether exceptions to the employment at-will doctrine are applicable to her case. In support of this contention, Karen directs our review to her deposition and her subsequent affidavit.

*The Effect of Karen's Affidavit*

{¶16} As an initial matter, we first must determine the effect of Karen's affidavit which was submitted in opposition to Post 401's motion for summary judgment, and appears to be inconsistent with her deposition. In order to make this determination, it is necessary to consider whether Karen's affidavit contradicts or merely supplements her former deposition. *Byrd v. Smith*, 110 Ohio St.3d 24, 29-30, 2006-Ohio-3455, N.E.2d 47.

{¶17} Nearly nine months elapsed between Karen's deposition and the submission of the affidavit accompanying her memorandum contra to 401's motion for summary judgment. During this time period, the record bears no indication of the existence of the alleged promises contained in her affidavit.

However, in her affidavit Karen for the first time alluded to the following promises that Post 401 made when they hired her:

> * * *
> **3. In order for me to leave my 22 years of employment with GTE and all the job security and benefits I received, I advised the Executive Committee of Post 401 that I need a salary consistent with what I made at GTE.**
>
> **4. The Executive Committee agreed to match my GTE salary and promised I would have a job as Canteen Manager as long as I fulfilled my job description.**
> * * *

(Affidavit, p.1)

{¶18} In order to assess whether Karen's affidavit contradicts or merely supplements her deposition, we must review Karen's deposition to determine whether she was given the opportunity by opposing counsel to discuss these alleged promises on the record. The following are excerpts from Karen's deposition that are relevant to this inquiry:

> **Q: And how long did you continue to work for GTE?**
>
> **A: Until May of 2000.**
>
> **Q: What happened then?**
>
> **A: The Legion offered me a canteen manager position and I left the phone company.**
>
> **Q: So when was it that you went to work for the Legion? When we say the Legion, we're talking about Post 401 Caledonia, the Defendant?**

**A: Right. I started bartending there in about late October or November of '99.**

**Q: That's when you were still at GTE?**

**A: Yes.**

**Q: And how long did you continue bartending?**

**A: Until October the 8th, 19—or this is 2008, 2007.**

**Q: Now, I believe at some point in time you became I believe you said the canteen manager?**

**A: They offered me the job bartending in October or November and then—**

**Q: '99?**

**A: In '99. And then in the Spring of 2000, they offered me the canteen manager's job.**

**Q: Which you accepted?**

**A: Yes, I did.**

(Depo. p. 8-9).

\* \* \*

**Q: Now, you've alleged in your Complaint that you were wrongfully terminated. Is that they wrongfully terminated your employment?**

**A: Yes.**

**Q: Why do you feel that you were wrongfully terminated?**

**A: As long as I've been at the Legion and I understand their meeting dates, I know that you cannot conduct any Legion business outside of your dates, your meeting dates. So I knew that they had an illegal**

**meeting. They had never said anything to me about I was causing a problem or there was a problem. I have never to this date been told why I was terminated other than my services were no longer needed.**

**Q: So are you saying that you believe that you were wrongfully terminated because there was an illegal meeting in your opinion?**

**A: In my opinion, yes, without just cause.**

**Q: And you feel you were terminated without just cause, is that what you are saying?**

**A: Yes.**

**Q: Any other reason why you think your termination was illegal?**

**A: Well, I don't know any other reason than—I don't think it was right**.

(Depo., p. 23-24).

**\* \* \***

**Q: Okay. Now, I'm going to take you back to 2000 for a moment when you were hired as canteen manager. Do you recall who—was there an individual who specifically told you you were hired?**

**A: No. There were three.**

**Q: Okay. There were three? This wasn't the whole Board, this was three?**

**A: This was three members.**

**Q: Do you recall who those three were?**

**A: Tom Hetzel, Bill Berry and Perry Worcester interviewed me.**

**Q: They were the ones that said you were hired at one point?**

**A: It might have been Tom that told me, but they pretty much told me that night I was.**

**Q: Were there any—was there anything written in black and white on a piece of paper, any terms and conditions of your employment when you were hired?**

**A: Meaning?**

**Q: Did they say other than a job description, you had a job description you said, if you recall correctly?**

**A: Yeah, they gave me a job description.**

**Q: Other than a job description, was the hiring of you and the terms and conditions that hiring all verbal?**

**A: I don't know that I signed a contract. I might have. I don't know.**

**Q: You're not aware of any?**

**A: No. Can I say something? That when they hired me, that was strictly as a bartender then.**

**Q: I'm talking about when you were hired as canteen manager?**

**A: There was no contract. They just gave me a list of canteen manager duties.**

**Q: Okay. And they told you your rate of pay would be different?**

**A: No, I still got $450 a week or that's what I would be getting because I was on hourly, yes. I was on hourly before until canteen manager.**

**Q: Did they when they hired you as Canteen Manager, did anyone tell you anything else that you haven't disclosed to us about any specific terms or conditions of your employment?**

**A: As far as?**

**Q: Anything about your employment?**

**A: My hours?**

**Q: Anything about your employment. You got your job description, you got your rate of pay, go do your job, anything else?**

**A: Other than I did some payroll.**

**Q: I'm talking about did they tell you anything else?**

**A: The only thing I was ever told was that I would receive a check for partial payment and the rest would be cash.**

**Q: A check for partial payment? I lost you on that one I don't understand.**

**A: Well, they paid me my salary was $453 a week of which they would issue me a check for $250 which they would take taxes out of and I would out of our gambling monies I was to pay myself $200 and reimburse myself the $53 that they took out of the check for taxes which I made $453.**

**Q: Okay. Anything else?**

**A: I'm not sure what you are looking for.**

**Q: I'm not looking for anything. I just want to know what you know.**

**A: Other than my canteen duties and how to do the pay, I don't know. I don't think there was anything else**

(Depo., p. 34-38).

{¶19} In reviewing Karen's deposition in its entirety, we believe that the questioning of opposing counsel provided Karen with ample opportunity to disclose the existence of the promises later alleged in her affidavit to have taken

-12-

place at the time of her hiring as Canteen Manager. Karen was repeatedly asked about the specific terms and conditions of her employment in addition to being asked specific questions concerning the precise circumstances of her hiring as Canteen Manager in 2000. In response to these questions, Karen proved that she was able to sharply recall the acute details of her hiring eight years prior. However, Karen failed to disclose any of the key promises which she now alleges induced her to leave the benefits and security of a job that she held for 22 years.

{¶20} Other than the statements contained in Karen's affidavit, there is no evidence in the record of the existence of these promises. Moreover, prior to Post 401 moving for summary judgment, Karen's counsel deposed members of the Executive Committee who were involved in the decision to terminate Karen at the unauthorized meeting. In reviewing these depositions, there are no references—either in the questioning or in the responses of the Executive Committee Members—to any promises made to Karen concerning her employment. Further, the record supports some evidence that Tom Hetzel, a member of the Executive Committee who Karen stated was integral in her hiring, remained an active member of the Executive Committee at the time of this lawsuit. Despite his apparent personal knowledge of the details of Karen's hiring in 2000, Tom Hetzel was not deposed by Karen's counsel as part of this litigation.

{¶21} Nevertheless, Karen now asserts that the promises contained in her affidavit create a genuine issue of material fact notwithstanding the lack of evidence to substantiate the existence of the alleged promises prior to Post 401 filing its motion for summary judgment. However, based on the foregoing analysis, we conclude that Karen's affidavit contradicts rather than merely supplements her deposition.

{¶22} In *Byrd v. Smith*, the Supreme Court of Ohio devised a framework to examine the effect of an affidavit submitted by a non-moving party in opposition of summary judgment which contradicts their own prior deposition:

> **If an affidavit appears to be inconsistent with a deposition, the court must look to any explanation for the inconsistency.**
> * * *
> **Ordinarily, under [Civ.R.] 56(C), when an affidavit is inconsistent with affiant's prior deposition testimony as to material facts and the affidavit neither suggests affiant was confused at the deposition nor offers a reason for the contradictions in her prior testimony, the affidavit does not create a genuine issue of fact which would preclude summary judgment. We hold that an affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment.**

*Byrd*, Ohio St.3d at 30, 850 N.E.2d 47. (Internal citations omitted).

{¶23} Upon reviewing Karen's affidavit within this framework, it is apparent that the inconsistency between her deposition and affidavit involves material facts essential to Karen's assertion that this case falls within the

promissory estoppel and implied contract exceptions to the employment at-will doctrine. However, noticeably absent from the affidavit is *any* explanation for the inconsistency or *any* suggestion that Karen was confused at the time of deposition. Indeed, Karen offers *no* explanation for why the existence of these alleged promises was not addressed prior to submitting the affidavit in opposition of summary judgment.

{¶24} According to the foregoing law, without sufficient explanation for the inconsistency between her former deposition and her affidavit, Karen's affidavit cannot be offered to establish a genuine issue of material fact. Therefore, we must exclude the inconsistent statements averred in Karen's affidavit from our review of the trial court's decision to grant summary judgment in favor of Post 401.

*Post 401's Motion for Summary Judgment*

{¶25} An appellate court reviews a grant of summary judgment independently, without any deference to the trial court. *Conley-Slowinski v. Superior Spinning & Stamping Co.* (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991. The standard of review for a grant of summary judgment is de novo. *Hasenfratz v. Warnement*, 3rd Dist. No. 1-06-03, 2006 Ohio 2797, citing *Lorain Nat'l. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 572 N.E.2d 198. A grant of summary judgment will be affirmed only when the requirements of Civ.R.

56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); see *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.

{¶26} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 116, 526 N.E.2d 798. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ.R. 56(E). In ruling on a summary judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences, rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in

favor of the non-moving party. *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653.

### A.     *Implied Contract and Promissory Estoppel*

**{¶27}** Generally, in an at-will-employment relationship, the employer may discharge the employee at any time, even without cause, so long as the reason for the discharge is not contrary to law. *Wright v. Honda of Am. Mfg., Inc.*, 73 Ohio St.3d 571, 574, 653 N.E.2d 381, 1995-Ohio-114. See also *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 483 N.E.2d 150, paragraph one of the syllabus ("[E]ither party to an oral employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law.").

**{¶28}** In the present case, Karen maintains that she was not an employee at-will and relies on two exceptions to the employment-at-will doctrine in support of this contention: (1) where the employer has made a promise from which the employee can prove promissory estoppel, and (2) where the facts and circumstances surrounding the employment demonstrate the existence of explicit or implicit contractual terms concerning discharge. *Wright* at 574, 653 N.E.2d 381; *Kelly v. Georgia-Pacific Corp.* (1989), 46 Ohio St.3d 134, 545 N.E.2d 1244, paragraphs two and three of the syllabus; *Mers*, paragraphs two and three of the syllabus.

{¶29} In reviewing the record, the alleged promises contained in Karen's affidavit are the only factual basis upon which Karen relies to make the assertion that her employment with Post 401 meets these exceptions. Having found that the statements averred in her affidavit contradict her former deposition without explanation and do not establish an issue of material fact, we cannot find any other factual basis in the record to support Karen's claim of promissory estoppel or the existence of an implied contract. Accordingly, we find that the trial court properly granted summary judgment as to these claims.

*B. Ultra Vires*

{¶30} As the primary basis for her wrongful termination claim, Karen maintains that Post 401 committed an *ultra vires* act because the decision to terminate her was effectuated at an unauthorized meeting held in violation of Post 401 bylaws. At common law, the term *ultra vires* was used to describe an act of a corporation that was done either in excess of authorized power or performed in an unauthorized manner. The Ohio Legislature promulgated a series of statutes which supplant the common law *ultra vires* doctrine with regard to the authority of non-profit corporation, such as Post 401. See R.C. 1702.12.

{¶31} Section 1702.12(I)(1) of the Revised Code delineates those who have standing to assert an *ultra vires* action against a corporation and provides, in pertinent part:

**No lack of, or limitation upon, the authority of a corporation shall be asserted in any action except as follows:**

**(a)     By the state in an action by it against the corporation;**

**(b)     By or on behalf of the corporation against a director, an officer, or a member as such;**

**(c)     By a member as such or by or on behalf of the members against the corporation, a director, an officer, or a member as such.**

{¶32} Initially, Karen made no assertion that she was a member of Post 401 and cited no authority providing that she had standing to bring an *ultra vires* action against Post 401. Furthermore, even if Karen were a social member of the club,[3] her complaint of wrongful termination is not the kind of action contemplated by the *ultra vires* doctrine. See R.C. 1702.02(H) (enumerating the type of prohibited corporate actions which cause *injury to the corporation* or *injury to an individual's membership to the corporation* as a result of the unauthorized conduct); See also *Moore v. Christ's Christian Fellowship Church, Inc.*, 172 Ohio App.3d 398, 2007-Ohio-3095, 875 N.E. 121; *Rhea v. Miami Valley Child Development Center, Inc.* (1980), 2nd Dist. No. 6642. Here, Karen sues for injury based on an employment-at will relationship wherein she alleges to suffer personal harm as a result of being wrongfully terminated, not of an injury suffered by the corporation or by reason of some derivative membership interest.

---

[3] American Legion membership is strictly reserved for veterans of the U.S. Armed Forces and there is no evidence in the record that Karen satisfies this requirement.

**{¶33}** Moreover, in support of her claim that her termination was in violation of Post 401's bylaws, Karen cites the provisions in Post 401's constitution which simply dictate the manner in which Post 401's administrative meetings are held. However, nowhere in her pleadings does Karen cite any rules of the corporation which govern employment relations as evidence that Karen's termination itself was in violation of Post 401's bylaws. Therefore, we find Karen's claim that her termination was an *ultra vires* act to be without merit.

**{¶34}** Furthermore, notwithstanding her claim that an *ultra vires* action occurred, the Executive Committee conceded that the initial meeting resulting in Karen's termination was improper. As such, the Executive Committee voted to reinstate Karen and scheduled a meeting with her to inform her of the mistake. Based on this concession, Karen also maintains that she was never formally terminated and remains ready able and willing to return to her position as Canteen Manager. However, Karen's assertion that she was never terminated is problematic. As stated in her deposition, Karen told the Executive Committee that she would consider its offer to reinstate her as Canteen Manager if certain additional terms were met. Karen further told the Executive Committee that even if those terms were met, she would still need time to consider returning to her position as Canteen Manager.

{¶35} Simply put, instead of accepting the offer to return to her position as Canteen Manager, Karen required that additional terms be met in order for her to *consider* returning to the position, effectively making a counter-offer. Post 401 failed to meet those terms, neither party attempted to resume negotiations and the position of Canteen Manager was eliminated. Based on the foregoing sequence of events, it is apparent that even if Karen was not properly terminated, she, at the very least, refused Post 401's original offer to return to her position as Canteen Manager. Therefore, we find that the parties reached a final resolution on the matter of Karen's employment as Canteen Manager. Accordingly, having found no existence of a genuine issue of material fact, we conclude that trial court's grant of summary judgment as to this claim was appropriate. [4]

{¶36} For all the reasons stated above, Karen's assignment of error is overruled and the judgment of the Marion County Court of Common Pleas granting summary judgment in favor of Post 401 is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jnc**

---

[4] We further note that Karen raises an additional argument that her termination was in violation of public policy. However, this argument was raised for the first time on appeal and was not before the trial court. Karen does not assert a legitimate factual basis for this exception to the employment at-will doctrine but simply makes bald assertions that she was "maliciously discharged." Upon our review of the record, we find no merit to this claim especially in light of the fact that Post 401 offered to reinstate Karen as Canteen Manager, which she subsequently refused unless certain requirements were met.