OPINION
{¶ 1} Appellant, Donna Swigart ("Swigart"), appeals the May 4, 2004 judgment entry of the Portage County Court of Common Pleas, affirming the decision of the State Personnel Board of Review ("Board of Review") to remove her from her employment with Kent State University ("Kent State"). For the following reasons, we affirm the decision of the trial court.
 {¶ 2} Swigart began working at Kent State in February 1999. In August 2000, she obtained the position of Program Assistant in the McNair Scholars Program with the Research and Graduate Studies Department. The McNair Scholars Program is a program to assist students in preparing for graduate school. In order to participate in the program, students must maintain a grade point average of 2.5. Academic information regarding students in the program was kept in a database known as the Student Information System, to which Swigart had access.
 {¶ 3} After obtaining her position with the McNair Scholars Program, Swigart received a letter explaining that, as an employee with access to "confidential, private, or sensitive information," Swigart must understand her responsibility "to ensure the confidentiality of sensitive and protected record information." Swigart also received a copy of the university's policy for the retention and dissemination of student information.
 {¶ 4} On August 21, 2000, Swigart signed the university's "Agreement for the Secured Use and Confidentiality of University Records and Data." This document provides: "All Kent State University employees hold a position of trust relative to student and University information in any form and must recognize the responsibilities entrusted to them in preserving the security and confidentiality of this information." This document also acknowledged that the university and its employees were subject to the Family Educational Rights and Privacy Act of 1974 ("FERPA"). By signing this document, Swigart acknowledged the following: "I am familiar with the Kent State University policies * * * for administering and maintaining student education records. * * * I will not exhibit or divulge the contents of any record * * * to any person except in the conduct of their work assignment in accordance with University and office policies. * * * I understand that access to information will be granted only on a strict `need-to-know' basis, the determination of which will be made by the data custodian(s) in cooperation with the individual's security administrator. * * * I understand that violation of this agreement may lead to reprimand, suspension, dismissal or other disciplinary action consistent with the general personnel policies of the University."
 {¶ 5} Swigart testified that she was not provided a copy of FERPA by the university. She also testified that, while in a prior position at Kent State, she was told that a student's release was necessary before any of that student's academic records or information could be released.
 {¶ 6} D'Andra Mull ("Mull"), a student at Kent State and participant in the McNair Scholars Program, was a candidate for student government in March 2001. On March 13, 2001, a story was published in the Campus Newspaper, The Daily Kent Stater, listing the candidates and their GPAs. Mull's GPA was reported as 2.92. Swigart, acting on her own, contacted The Daily Kent Stater and told them that the information was incorrect. While doing so, Swigart testified that she unintentionally revealed that Mull's correct GPA was 2.68.
 {¶ 7} On March 14, 2001, The Kent Stater printed the following story under the headline "KSU staff member claims candidate lied about GPA": "Executive director candidate D'Andra Mull is claiming a higher GPA than university records show, the Daily Kent Stater has learned. Mull has said she has a 2.92 GPA, while Student Information Systems shows a 2.68, according to a university staff member who came forward with the information. That GPA was confirmed by a second source that has access to the student record system. But Mull denies she gave an inaccurate GPA. Both sources requested anonymity for fear of legal repercussions." Mull subsequently filed suit against Kent State for disclosing her GPA.
 {¶ 8} On March 20, 2001, Swigart was notified that a pre-disciplinary hearing was scheduled for March 26, 2001, for the purpose of presenting information regarding the following charge: "Breach of Confidentiality Agreement." At this hearing, Swigart admitted to inadvertently disclosing Mull's GPA to the Kent Stater. Thereafter, Swigart was removed from her position at Kent State, effective July 6, 2001, for "Violation of the Kent State University Agreement for the Secured Use and Confidentiality of University Records and Data."
 {¶ 9} Swigart appealed her removal to the State Personnel Board of Review ("Board of Review"). Swigart's appeal was heard before an administrative law judge on April 3, 2002. The administrative law judge issued a report and recommended the affirmance of Swigart's removal. On October 2, 2003, the Board of Review adopted the administrative law judge's report and recommendation.
 {¶ 10} Swigart appealed the Board of Review's decision to the Portage County Court of Common Pleas. Following an oral hearing, the court's magistrate issued her decision affirming the Board of Review's decision. On May 4, 2004, the trial court overruled Swigart's objections to the magistrate's decision and adopted that decision. This appeal timely follows.
 {¶ 11} Swigart raises the following assignments of error:
 {¶ 12} "[1.] The State Personnel Board of Review erred and abused its discretion in that the removal is excessive given appellant's employment record at Kent State University.
 {¶ 13} "[2.] The State Personnel Board of Review erred and abused its discretion in not requiring the university to follow progressive discipline.
 {¶ 14} "[3.] The Board erred in not finding the order of removal defective.
 {¶ 15} "[4.] The State Personnel Board of Review erred in that appellee's evidence regarding a violation of university policy and/or FERPA is questionable given the exceptions in the policy and law.
 {¶ 16} "[5.] Ohio law regarding personal information the Board erred in discharging appellant in that appellee has failed to comply with systems. [Sic]
 {¶ 17} "[6.] The State Personnel Board of Review erred and abused its discretion in not considering disparate treatment in evaluating the appropriateness of the discipline imposed.
 {¶ 18} "[7.] [Administrative Law] Judge Young and the State Personnel Board of Review abused his/its discretion by denying appellant the opportunity to introduce relevant evidence.
 {¶ 19} "[8.] The State Personnel Board of Review erred in that the notice of predisciplinary hearing was defective."
 {¶ 20} Pursuant to R.C. 124.34, employees in the classified service of the state may not be removed except for, inter alia, "neglect of duty." R.C. 124.34 also provides that state employees "may appeal from the decision of the state personnel board of review * * * to the court of common pleas * * * in accordance with the procedure provided by section119.12 of the Revised Code."
 {¶ 21} "The [trial] court may affirm the order of the [board of review] if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12. Otherwise, the trial court "may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence * * *." R.C.119.12.
 {¶ 22} The trial court's decision may be appealed by either the employee or the state employer "as in the case of appeals in civil actions." R.C. 119.12. "While the determination to be made by the court of common pleas is based on whether there is reliable, probative and substantial evidence to support the board's finding, the standard of review to be applied by this court is whether the court of common pleas abused its discretion in making that determination." Kennedy v. MarionCorrectional Institution, 69 Ohio St.3d 20, 21-22, 1994-Ohio-83
(citations omitted).
 {¶ 23} In her first assignment of error, Swigart argues that her removal is an abuse of discretion in light of her positive performance evaluations and letters of recommendations. We disagree.
 {¶ 24} It has been recognized that a Board of Review, by virtue of its power to modify a decision under R.C. 124.34(B), "has the authority * * * to modify a removal order if it finds the charges are proven but certain mitigating factors are also proven, warranting a reduction in the penalty." Pysher v. Ohio Bureau of Employment Services (March 10, 1999), 5th Dist. No. 98-CA-0054, 1999 Ohio App. LEXIS 1480, at *3, citingSteinbacher v. Louis (1987), 36 Ohio App.3d 68, 70-71, and Maiden v.Fayette Cty. Bd. of Retardation and Developmental Disabilities (1984),16 Ohio App.3d 196, 199-200.
 {¶ 25} The administrative law judge recognized that Swigart had never been disciplined before the subject incident. Nonetheless, the judge concluded that Swigart had only worked at Kent State for two and a half years; that Swigart's actions resulted in a lawsuit being filed against Kent State; and that Swigart knowingly disclosed confidential student information despite being aware that such disclosure violated university policy and could result in her removal. The trial court agreed that the intentional nature of Swigart's conduct and the seriousness of its consequences outweighed any mitigation Swigart's good reputation may have merited. We find no abuse of discretion in the trial court's decision. Swigart's first assignment of error is without merit.
 {¶ 26} In her second and third assignments of error, Swigart argues that the Board of Review abused its discretion by failing to follow the progressive discipline measures and other procedures outlined in Ohio Admin. Code 123:1-75-02 and 123:1-75-03.
 {¶ 27} R.C. 124.34, which describes the procedure and the grounds on which an employee in classified service may be removed, does not impose an obligation of progressive discipline on a state employer. Carmichaelv. State Personnel Bd. of Review (June 10, 1993), 10th Dist. Nos. 92AP-1707 and 92AP-1708, 1993 Ohio App. LEXIS 2952, at *8; Dept. of HumanServices v. Shipka (Dec. 17, 1991), 10th Dist. No. 91AP-789, 1991 Ohio App. LEXIS 6164, at *6-*7; cf. R.C. 4117.08(C)(5) ("[u]nless a public employer agrees otherwise in a collective bargaining agreement, nothing in Chapter 4117 * * * impairs the right * * * of each public employer to * * * discharge for just cause * * * employees").
 {¶ 28} Swigart relies on Ohio Admin. Code 123:1-75-02 and 123:1-75-03, which outline "the procedure to be followed when * * * it [is] necessary to take disciplinary action against a classified employee of the department of administrative services." As Swigart was not an employee of the department of administrative services, these provisions have no application to her. The second and third assignments of error are without merit.
 {¶ 29} In her fourth assignment of error, Swigart argues that "federal law is, at best, confusing for lawyers." Accordingly, Swigart, a member of the "secretarial staff," could not be expected to comply given her inadequate training by Kent State. We disagree.
 {¶ 30} Swigart was not removed for violating federal law. The order of removal stated, "specifically," that Swigart was being removed for "violation of the Kent State University Agreement for the Secured Use and Confidentiality of University Records and Data." A copy of this agreement, signed by Swigart, was in evidence. By signing the agreement, Swigart acknowledged that she understood Kent State's policies regarding student education records; that she would not disclose the contents of a student's record except in accordance with university policies; and that she understood that she could be terminated for violating these policies. Moreover, Swigart testified that she subjectively knew that a student's academic record was confidential and could not be disclosed to other students.
 {¶ 31} We agree with the trial court that the administrative law judge's finding that Swigart knew "that she was not supposed to disclose any student GPA to anyone, unless it was a faculty member who on an educational need to know basis required it or unless the student expressly authorized its release" is based on reliable, probative, and substantial evidence. The fourth assignment of error is without merit.
 {¶ 32} In her fifth assignment of error, Swigart argues that Kent State's failure to adequately train her violated R.C. 1347.05(C), which requires every state agency that maintains a personal information system to "[i]nform each of its employees who has any responsibility for the operation * * * of the system * * * of all rules adopted in accordance with this section."
 {¶ 33} The issue of whether Kent State was in compliance with R.C.1347.05(C) is irrelevant to the matter before us, i.e. whether Swigart violated university policy regarding the confidentiality of student academic records and whether removal was permissible discipline. The fifth assignment of error is without merit.
 {¶ 34} In her sixth and seventh assignments of error, Swigart argues that Kent State engaged in disparate treatment of her in violation of Ohio Admin. Code 124-9-11(A) and (B). Swigart claims that the Board of Review denied her the opportunity to present evidence of disparate treatment. The relevant sections of the Administrative Code provide as follows:
 {¶ 35} "(A) The board may hear evidence of disparate treatment between the appellant and other similarly situated employees of the same appointing authority for the purpose of determining whether work rules or administrative policies are being selectively applied by the appointing authority or to determine whether the discipline of similarly situated employees is uniform. Requests for discovery under this rule shall be limited to information relating to specific incidents or persons known to the employee or his representative."
 {¶ 36} "(B) Evidence of disparate treatment will be considered in evaluating the appropriateness of the discipline which was imposed."
 {¶ 37} The issue of whether employees are sufficiently similar to merit consideration as evidence of disparate treatment is for the trier of fact, i.e. the Board of Review. Ohio Dept. of Mental Retardation andDevelopmental Disabilities v. Moore (June 18, 1998), 4th Dist. No. 98 CA 1, 1998 Ohio App. LEXIS 2953, at *13-*14 (citation omitted); Turner v.Madison Correctional Institution (Aug. 19, 1992), 2nd Dist. No. 2863, 1992 Ohio App. LEXIS 4426, at *11; cf. Kelly v. Georgia-Pacific Corp.
(1989), 46 Ohio St.3d 134, 140 ("the question regarding disparate treatment is a triable issue").
 {¶ 38} Although the Board of Review has discretion to consider evidence of disparate evidence in evaluating the appropriateness of discipline, the administrative code does not mandate absolute uniformity of discipline. "An employee's discipline must stand or fall on its own merits." Green v. Western Reserve Psychiatric Habilitation Center
(1981), 3 Ohio App.3d 218, 219 (citations omitted); accord, Williamsv. Akron (2001), 141 Ohio App.3d 724, 731; Hiett v. Heywood (1986),31 Ohio App.3d 222, 225.
 {¶ 39} Prior to the hearing before the administrative law judge, Swigart attempted to subpoena two reporters for the Kent Stater in order to confirm the existence of a "second source" for Mull's GPA as contained in the Student Information System. These subpoenas were quashed by the Board of Review.
 {¶ 40} The decision to quash these subpoenas did not constitute an abuse of discretion. Pursuant to R.C. 2739.12, which exempts reporters from having to disclose their sources through judicial process, Swigart could not have questioned the reporters other than to confirm the existence of a second source. Swigart would not have been able to have the reporters reveal the identity of the second source. The mere existence of a second source for Mull's GPA, however, has no relevance to Swigart's violation of the confidentiality agreement. Nor is the existence of a second source probative of disparate treatment on the part of the university, since it was impossible for Swigart to establish that the second source and Swigart were similarly situated employees, without testimony from the reporters as to the identity of the second source, which identity was protected by statute.
 {¶ 41} Swigart also complains that the Board of Review failed to authorize the deposition of Dale Richards, the appointing authority at Kent State who signed Swigart's removal order. Richards responded to Swigart's interrogatory requests by affidavit prior to hearing and testified in person at the hearing where he was subject to cross-examination by Swigart's counsel. Richards testified that Swigart is the only university employee, of whom he is aware, that has violated the university's policy regarding confidential records since that policy went into effect in August 2000. We find no error in the failure to authorize Richard's deposition.
 {¶ 42} Finally, Swigart claims that she was denied the opportunity to present additional evidence regarding her prior job performance and her presence when the university's policy and FERPA were discussed by staff in the McNair Scholars Program when the administrative judge denied her motion for a continuance at the close of the hearing. There was no error in the denial of Swigart's motion: Swigart had adequate opportunity to prepare for the hearing; Swigart's prior performance evaluations were admitted into evidence and a former supervisor testified that Swigart was a "competent" and "reliable" employee; and Swigart herself testified as to her understanding of university policy and FERPA.
 {¶ 43} The sixth and seventh assignments of error are without merit.
 {¶ 44} In her eighth assignment of error, Swigart argues that her notice of the pre-disciplinary hearing failed to comport with the requirements of procedural due process. Specifically, the written notice failed to provide an explanation of the university's evidence against her; the notice did not inform her of her right to representation, to introduce evidence, to cross-examine witnesses, or inform her of the discipline anticipated; and she did not receive the notice until less than three days prior to the hearing.
 {¶ 45} "The essential requirements of due process * * * are notice and an opportunity to respond. * * * To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Kennedy,69 Ohio St.3d at 23, citing Cleveland Bd. of Edn. v. Loudermill (1985),470 U.S. 532, 546. "A classified civil servant employee of the state of Ohio must be afforded a pretermination disciplinary hearing; however, such hearing need not be elaborate, but must afford the employee notice and the opportunity to have an explanation of the employer's charges and evidence against him, and an opportunity to present his side of the story." Local 4501, Communications Workers of America v. Ohio StateUniversity (1990), 49 Ohio St.3d 1, 6.
 {¶ 46} Notice of the pre-disciplinary hearing was sent to Swigart, via certified mail, on March 20, 2001, six days prior to the hearing date. Cf. Robinson v. Springfield Local School Dist. Bd. of Edu. (2001),144 Ohio App.3d 38, 41 (notice of disciplinary hearing sent three days prior to hearing). For the purposes of a pre-termination disciplinary hearing, due process does not require that an employee be given the right to representation. Coats v. Cuyahoga Metropolitan HousingAuthority (April 12, 2001), 8th Dist. No. 78012, 2001 Ohio App. LEXIS 1699, at *16. As to the right to present evidence and cross-examine witnesses, the notice Swigart received adequately informed her of these rights by stating "you will be afforded the opportunity to respond to the charges and present any information you deem appropriate." Cf. Kennedy,69 Ohio St.3d at 23 (due process does not entitle an employee to conduct pre-disciplinary hearing discovery).
 {¶ 47} The written pre-disciplinary hearing notice Swigart received did not explain the evidence against her. In the present case, this does not constitute a deprivation of Swigart's due process rights as Swigart's opportunity to be heard was not impaired. Cf. Estes v. Texas (1965)381 U.S. 532, 542 ("in most cases involving claims of due process deprivations we require a showing of identifiable prejudice"). Throughout this entire proceeding, the essential evidence against Swigart was Swigart's own admission that she revealed Mull's GPA to the Kent Stater.
 {¶ 48} On March 14, 2001, the day after Swigart revealed Mull's GPA, Swigart met with her supervisor and an associate dean of the university. Swigart was informed that her conduct may have violated the university's confidentiality policy and FERPA, that the incident would be investigated, and that her employment could be terminated. Later that day, Swigart was contacted by a Kent State police detective and asked to provide a written statement regarding the disclosure of Mull's GPA. The written notice, mailed only six days later, informed Swigart that a hearing was being held on the charge of her breach of the university's confidentiality agreement. Given these circumstances, Swigart was fairly apprised of the charges and evidence against her.
 {¶ 49} Finally, we point out that Swigart was given full opportunity to present evidence and to challenge her removal before the Board of Review and on appeal in common pleas court. Loudermill, 470 U.S. at 547
n. 12 ("the existence of posttermination procedures is relevant to the necessary scope of predetermination procedures"); Robinson,144 Ohio App.3d at 44 ("a minimal opportunity to be heard at a pretermination hearing is sufficient where the employee is entitled to a full evidentiary hearing post-termination") (citation omitted). Although the results of Swigart's misconduct are unfortunate, there was no unfairness in the procedure by which Swigart was removed from her position.
 {¶ 50} The eighth assignment of error is without merit.
 {¶ 51} For the foregoing reasons, the decision of the Portage County Court of Common Pleas, affirming Swigart's removal by the Board of Review, is affirmed.
Ford, P.J., O'Toole, J., concur.