LONG, Appellant,

v.

OHIO DEPARTMENT OF JOB & FAMILY SERVICES, Appellee.

[Cite as *Long v. Ohio Dept. of Job & Family Servs.*,
180 Ohio App.3d 772, 2009-Ohio-643.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–691.

Decided Feb. 12, 2009.

Michael A. Moses, for appellant.

Richard Cordray, Attorney General, and Joseph N. Rosenthal and Mahjabeen F. Qadir, Assistant Attorneys General, for appellee.

FRENCH, Presiding Judge.

{¶ 1} Appellant, Warren Long, appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of the State Personnel Board of Review ("SPBR"), which affirmed appellant's removal from his position with appellee, Ohio Department of Job & Family Services ("ODJFS"). For the following reasons, we affirm.

{¶ 2} On August 12, 2002, appellee removed appellant from his classified civil service position for violating several of appellee's written work policies. Appellant appealed his removal to the SPBR. The SPBR stayed the appeal pending the disposition of a related criminal case. Following appellant's conviction, appellee filed a motion to dismiss appellant's appeal to the SPBR. After a hearing, an administrative law judge ("ALJ") issued a report and recommendation finding that as a result of his conviction, appellant forfeited his status as a classified employee and was thus barred from receiving any compensation from the date of his removal forward. Accordingly, the ALJ recommended that appellant's appeal be dismissed. The SPBR overruled appellant's objections, adopted the ALJ's report and recommendation, and dismissed the appeal. Appellant appealed the SPBR's dismissal order to the common pleas court, which reversed and remanded the case for an evidentiary hearing.

{¶ 3} Following that hearing, a different ALJ issued a report recommending that the SPBR affirm the removal order. The ALJ concluded that although appellee had not proven all the allegations set forth in the removal order by a preponderance of the evidence, appellee had proven allegations serious enough to warrant upholding the removal order. Appellant filed objections to the ALJ's report and recommendation, but, on July 9, 2007, the SPBR issued an order adopting the ALJ's recommendation and affirming appellant's removal.

{¶ 4} Appellant filed a timely appeal, pursuant to R.C. 119.12, to the Franklin County Court of Common Pleas, where he argued that the SPBR's decision was not supported by reliable, probative, and substantial evidence. Appellant further argued that the SPBR failed to afford sufficient weight to appellant's evidence of disparate treatment. On July 15, 2008, the common pleas court affirmed the SPBR's order, finding that appellant's actions, as established by the evidence, constituted violations of appellee's written work policies. The court concluded that the SPBR's decision was supported by reliable, probative, and substantial evidence and was in accordance with law.

{¶ 5} Appellant timely appealed to this court, where he raises two assignments of error:

■ The decision of the lower court affirming the order of the State Personnel Board of review was erroneous insofar as the order of the board upholding the appellee's removal of Warren L. Long was not supported by reliable, probative and substantial evidence.

■ The decision of the lower court affirming the order of the State Personnel Board of review was erroneous insofar as the order of the board failing to give sufficient weight to appellant's evidence of disparate treatment was not in accordance with law.

{¶ 6} In an administrative appeal, pursuant to R.C. 119.12, the common pleas court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with the law. The Supreme Court of Ohio has defined reliable, probative, and substantial evidence as follows:

(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.

(Footnotes omitted.) *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303.

■ {¶ 7} The common pleas court's "review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" *Lies v. Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207, 2 OBR 223, 441 N.E.2d 584, quoting *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390. The common pleas court "must give due deference to the administrative resolution of evidentiary conflicts," although "the

findings of the agency are by no means conclusive." *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 407 N.E.2d 1265.

■■ {¶ 8} This court's standard of review is more limited than that of the common pleas court. In reviewing the common pleas court's determination that the SPBR's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the common pleas court abused its discretion. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264. " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. Absent an abuse of discretion, the appellate court may not substitute its judgment for that of the administrative agency or the common pleas court. *Provisions Plus Inc. v. Ohio Liquor Control Comm.*, Franklin App. No. 03AP–670, 2004-Ohio-592, 2004 WL 240215, ¶ 8, citing *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748. However, on the question of whether the board's order was in accordance with the law, this court's review is plenary. *Kistler v. Ohio Bur. of Workers' Comp.*, Franklin App. No. 04AP–1095, 2006-Ohio-3308, 2006 WL 1781457, ¶ 9.

■ {¶ 9} At the outset, we must address appellant's contention that the trial court applied the wrong standard of review when it affirmed the SPBR's order. "A trial court's application of a standard of review when reviewing an administrative order is a question of law, which we review de novo." *Johnson v. Ohio FAIR Plan Underwriting Assn.*, 174 Ohio App.3d 218, 2007-Ohio-6505, 881 N.E.2d 872, ¶ 4, citing *Beck v. Ohio Dept. of Commerce*, Clermont App. No. CA2005–04–030, 2006-Ohio-60, 2006 WL 39408, ¶ 7.

{¶ 10} As noted by appellant, in its decision and entry, the trial court initially cited R.C. 4141.282(H), which sets forth the standard of review applicable to an appeal from a decision of the Unemployment Compensation Review Commission. Following its analysis of the pertinent issues, however, the court concluded that "reliable, probative and substantial evidence supports the decision of the Board and the decision is in accordance with applicable law." As the court ultimately applied the correct standard of review set forth in R.C. 119.12, we find no merit in appellant's argument.

{¶ 11} Having determined that the trial court applied the correct standard of review, we turn now to the merits of appellant's appeal. By the first assignment of error, appellant contends that the court abused its discretion in affirming the

SPBR's decision, as it is not supported by reliable, probative, and substantial evidence.

{¶ 12} Documentary and witness testimony provided at the administrative hearing generally established the following facts. Appellant began his employment with appellee on January 4, 1988. At the time of his removal, appellant was an External Audit Manager I in the Audit Performance and Consulting Section of the Bureau of Audits, one of four bureaus within the Office of Research, Assessment, and Accountability. Appellant managed a group of auditors working in the Toledo and Cincinnati regions. Each of these regions employed one supervisor who reported directly to appellant. Appellant reported to External Audit Manager II, Christopher Carson.

{¶ 13} Appellant's job responsibilities primarily involved management and coordination of field audits for various entities, including Medicaid providers. Appellee issued appellant desktop and laptop computers equipped with software and e-mail capabilities to facilitate appellant's job performance. Appellant's position and job responsibilities exposed him to sensitive client-based information related to Medicaid services, including Medicaid recipients' names and Social Security numbers, as well as dates and types of services provided. This information could be accessed via appellant's desktop and laptap computers. All employees, including appellant, were required to abide by appellee's written work policies, including, as pertinent here, the "Standards of Employee Conduct," the "Computer and Information Systems Usage Policy," and the "Telephone Usage Policy."

{¶ 14} In 2002, Dorothy Hughes, an investigator in appellee's Office of the Chief Inspector, received a complaint from the Ohio Inspector General alleging that appellant had utilized his state position to commit fraud. Hughes investigated the matter on behalf of appellee. In the course of the investigation, Hughes interviewed appellant and several other individuals. The investigation also included an inspection of appellant's state-issued laptop and desktop computers and computer disks, as well as office telephone records.

{¶ 15} Following the investigation, Hughes issued a July 15, 2002 report, which summarized the interviews and the information gleaned from review of the computers, computer disks, and telephone records. That report provides the following pertinent facts. Hughes interviewed the complainant, David Dempsey, on May 29, 2002. Dempsey stated that his friend, Warren Anthony, introduced him to appellant in an effort to help him obtain a large business loan. Appellant represented that he was an auditor for the state of Ohio, that he owned his own company, and that he would have no problem securing the loan for Dempsey. Appellant told Dempsey to wire $15,000 to appellant's wife's bank account.

Dempsey complied with appellant's directive; however, appellant failed to obtain the loan and did not return the $15,000 to Dempsey.

{¶ 16} Hughes first interviewed appellant on May 30, 2002. Appellant stated that he knew Anthony personally, but was never involved in a business relationship with him. Appellant told Dempsey that he could secure the loan and that the broker's fees would be approximately $15,000. Dempsey was late with the payment, so appellant personally borrowed the money to pay the broker fees for him. When Dempsey wired the money to appellant, he kept it as repayment for his fronting the broker fees. Although the broker refused to extend the loan to Dempsey, appellant later arranged for a friend to loan the money to Dempsey. Dempsey refused to accept the loan. The broker refused to return the money because the loan was offered but refused.

{¶ 17} Hughes also questioned appellant about his computer usage. Appellant stated that he often permitted his staff to borrow his laptop computer while conducting field audits; however, he did not keep a written record showing to whom he loaned it. At the time of the interview, he was unsure whether he had the laptop or whether he had loaned it to a staff member. Accordingly, Hughes directed Steve Jones, a security officer employed by appellee, to accompany appellant to his home to search for the laptop. Jones retrieved the laptop and brought it to Hughes. Thereafter, appellant admitted that he had downloaded AOL onto the laptop and could access his personal e-mail account from the laptop. Later that day, at Hughes's direction, Jones confiscated computer disks from appellant's office.

{¶ 18} According to Hughes's report, review of the computer disks revealed that between 1996 and 2001, appellant created numerous non-work-related documents during working hours. Review of appellant's laptop confirmed appellant's admission that he had downloaded his personal AOL account, which included e-mail access, and that several non-work-related websites had been accessed, including several pornographic websites.

{¶ 19} As part of the investigation, Hughes also confiscated appellant's desktop computer. Review of the desktop revealed that e-mails with attachments containing pornographic photographs had been sent to and opened from the desktop and that at least one pornographic website had been accessed.

{¶ 20} On June 3, 2002, Hughes interviewed Warren Anthony. Anthony stated that he had numerous business dealings with appellant. Anthony verified that he introduced appellant to Dempsey and generally corroborated Dempsey's account of the failed loan transaction.

{¶ 21} Hughes again interviewed appellant on June 14, 2002. Appellant reiterated that he had no business dealings with Anthony. When questioned

about his computer usage, appellant initially admitted that he had received a single e-mail on his desktop containing the pornographic photographs; however, he later admitted that the photographs might have come in three or four e-mails. Appellant stated that he asked a computer technician named Wanda to instruct him on the procedure for opening the attachments, as he did not know how to do it. Appellant denied visiting pornographic websites on either his desktop or laptop computer. He stated that his cousin, Rashaan Price, used his laptop without his permission in early spring 2002; when he realized it was missing, he told Price to return it. He admitted that he had not properly secured the laptop, even though he suspected Price might have utilized his AOL account to send pornographic e-mails to women. Appellant also acknowledged that he made personal long distance and local calls from his office telephone and failed to reimburse the state for those calls.

{¶ 22} On June 17, 2002, Hughes interviewed Price, who stated that he had borrowed appellant's laptop several times in the preceding few years with appellant's permission. He last borrowed it in early March 2002 without appellant's permission; he returned it in May 2002 at appellant's request. Price was not aware that the laptop belonged to the state of Ohio. He admitted that he viewed pornographic websites on appellant's laptop, using appellant's AOL account. He further admitted that he sent pornographic e-mails to women under appellant's signature.

{¶ 23} Hughes interviewed Wanda Brown on June 25, 2002. Brown acknowledged that she worked as a computer technician in appellant's office from September to December 2000. She stated that she had never opened pornographic e-mails for appellant. She further stated that had she done so, she would have immediately reported it.

{¶ 24} In her report, Hughes concluded the following: (1) the information gathered during the investigation supported the allegation in the complaint that appellant utilized his state position to influence Dempsey to do business with him and that appellant engaged in a fraudulent act by accepting the $15,000, scheduling an apparently bogus loan closing, and failing to obtain the loan; (2) appellant had violated appellee's Standards of Employee Conduct, Computer and Information Systems Usage Policy, and Telephone Usage Policy by (a) exhibiting carelessness in the use of state equipment and property by failing to secure his state-issued laptop, which resulted in its unauthorized use and abuse by Price, (b) improperly utilizing his state-issued computer to create non-work-related documents, many of which were related to appellant's personal business ventures, (c) downloading software on both his desktop and laptop computers without authorization, (d) viewing pornographic material on his state-issued computers, and (e) making personal local and long distance calls from his state-issued telephones;

and (3) appellant failed to cooperate with the official investigation into Dempsey's complaint, in that he provided false, misleading, or incomplete information.

{¶ 25} Following the issuance of Hughes's report, appellee held a predisciplinary hearing on July 29, 2002. Thereafter, on August 12, 2002, appellee issued an order, which stated that appellant was being removed from his employment for violating seven of appellee's "Standards of Employee Conduct," as follows:

D4  Providing incomplete, false or misleading information during an administrative or official investigation or inquiry.

F7  Loading unauthorized software on State computer or connecting unauthorized hardware to computer or network.

F11  Use of State Internet System for unauthorized activities.

F12  Immoral or indecent conduct (including, but not limited to downloading pornographic material from the State Internet System).

F18  Unauthorized use or abuse of State equipment, property or State paid time.

F19  Carelessness in the use of State equipment or State property.

F23  Violation of 124.34 of the ORC; incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, acts of misfeasance or nonfeasance.

{¶ 26} The testimony provided by appellant, Hughes, and Price at the administrative hearing generally corroborated the information contained in Hughes's July 15, 2002 report, with the following additions. Appellant testified that appellee permitted its field auditors and managers to download personal e-mail provider software, such as AOL, in order to access e-mail while in the field, as connecting to appellee's server was often difficult. Appellant admitted that use of this software was restricted to work-related matters. He stated that he was unaware of any formal policy against using the software for personal reasons, however.

{¶ 27} Appellant admitted that Price's authorized and unauthorized use of his laptop computer was prohibited by appellee and that he was responsible for maintaining the security and integrity of the laptop. In addition, appellant admitted that he was not aware that Price took the laptop in March 2002 until appellant discovered it was missing in May 2002. As to the pornographic photographs recovered from his desktop, appellant testified that he opened the e-mails only because there was no indication that they contained objectionable material. He testified that he was embarrassed that the computer technician observed the photographs and immediately deleted them. He admitted that he did not report the incident to his supervisor or any other person of authority.

{¶ 28} Appellant further testified that he could not recall being provided with a copy of appellee's written computer-usage policy. He admitted that he generally understood that state computers were to be used only for official state business, however. He further testified that he did not send or receive the e-mails retrieved from his laptop and that he used his personal AOL account on the laptop only for work-related purposes.

{¶ 29} Hughes testified that appellee's standards of employee conduct and computer-usage policies prohibited the downloading or viewing of non-work-related material, including pornographic websites, on state-issued computers. She further testified that appellant's unauthorized downloading of AOL software onto his laptop computer violated appellee's computer-usage policy. She also averred that appellee's computer-usage policy prohibited use of computers by persons not employed by appellee and mandated that employees secure their computers to prohibit access by non-employees. Hughes also testified that appellant's personal local and long-distance telephone calls from his office phone violated appellee's telephone-usage policy.

{¶ 30} Hughes stated that her finding that appellant was untruthful in the official investigation stemmed from his denial of a business relationship with Anthony when documentary evidence established that he had such a relationship. Hughes also determined that appellant was untruthful in stating that he loaned his laptop to his subordinates during audits, as those subordinates denied borrowing it. She further found appellant untruthful because he denied any knowledge of a business called Scruples of Cincinnati, when a document retrieved from one of the confiscated computer disks indicated that he was the Chief Financial Officer of that entity.

{¶ 31} Price testified that he had borrowed appellant's laptop several times since the late 1990s and that appellant had never required him to obtain permission before doing so. Although appellant was aware that Price had sent e-mails utilizing his AOL e-mail account, appellant had never told him to stop doing so. Price acknowledged that he had appellant's laptop from March to May 2002, during which time he accessed the Internet and sent e-mails using appellant's AOL account. He further admitted that he sent sexually explicit e-mails to women under appellant's signature and may have mistakenly accessed porno-graphic websites.

{¶ 32} In her report and recommendation, the ALJ issued findings of fact and conclusions of law and recommended that the SPBR affirm appellant's removal for violating R.C. 124.34 and D4, F11, F12, F18, and F19 of appellee's standards of employee conduct. In particular, the ALJ concluded that appellant was aware of appellee's written work policies and understood that he was required to comply with them. As to the specific violations of those policies, the ALJ concluded that

appellant violated D4 because, during the investigation, he was evasive and not forthcoming about his business relationship with Anthony; he averred, without confirmation, that he loaned his laptop to his subordinates; he provided an implausible explanation concerning the inappropriate e-mail photographs discovered on his desktop; and he denied, despite documentary evidence to the contrary, that he was involved in an outside business venture.

{¶ 33} The ALJ further concluded that appellant violated F11, F12, and F18 because pornographic photographs and/or websites were recovered from appellant's laptop, desktop, and computer disks; non-work-related documents were recovered from the computer disks, and appellant provided implausible explanations for these incidents. The ALJ concluded, however, that appellee had not proven that appellant abused appellee's telephone-usage policy.

{¶ 34} The ALJ also concluded that appellant violated F19 because appellant did not take the necessary precautions to ensure that his laptop, which contained sensitive, client-based personal information, would not be used by a non-state employee. In so finding, the ALJ noted that appellant had presented no evidence demonstrating that he had reported the laptop missing or informed anyone that he did not generate the inappropriate materials recovered from it.

{¶ 35} The ALJ further concluded that appellant violated R.C. 124.34, as he engaged in dishonest and immoral conduct and neglected his duty. In particular, the ALJ found that appellant was dishonest throughout the investigation, as well as in taking $15,000 from Dempsey under false pretenses, attempting to hide the money in his wife's account, and not returning the money until ordered to do so by a court. The ALJ also determined that appellant's conduct was immoral by having inappropriate and pornographic photographs on his state-issued computers. In addition, the ALJ determined that appellant neglected his duty when he accessed inappropriate websites, e-mails, and non-work-related documents on his state-issued computers and was unaware of the whereabouts of his laptop for a significant period of time.

{¶ 36} Lastly, the ALJ concluded that appellee had not proven that appellant violated F7. More specifically, the ALJ found that while appellant technically violated the computer-usage policy by loading AOL onto his laptop without authorization, other evidence established that he and other employees were encouraged to download their own Internet service provider to enhance work-related communication while in the field.

{¶ 37} As noted previously, the trial court determined that the SPBR's order was supported by reliable, probative, and substantial evidence and was in accordance with law. On appeal to this court, appellant contends in his first assignment of error that the common pleas court abused its discretion in so

finding. More specifically, appellant contends that the SPBR ignored certain evidence and improperly resolved credibility issues in favor of appellee.

{¶ 38} Appellant first contends that the SPBR ignored appellee's failure to establish a chain of custody for the laptop and desktop computers and computer disks after they were confiscated from appellant's home and office. Appellant argues that appellee's failure in this regard compromised the reliability of the evidence recovered from the computers and computer disks. Testimony presented at the hearing shows that appellee established a proper chain of custody, however.

{¶ 39} Regarding the laptop, Jones testified that he retrieved the laptop from appellant's home and immediately turned it over to Hughes. Hughes corroborated this testimony. Hughes further testified that after she obtained control of the laptop, an employee in the chief inspector's office assisted her in viewing the information contained on it. Appellant presented no evidence that any of the persons who had access to the laptop tampered with it after it was removed from appellant's home.

{¶ 40} As to the desktop, Hughes testified that she took possession of it and gave it to a computer technician employed by appellee. The technician gave it to Hughes's supervisor and then provided Hughes and her supervisor with administrative access to the computer files. Again, appellant presented no evidence establishing that Hughes, her supervisor, or the computer technician manipulated the data on the desktop after it was removed from appellant's office.

{¶ 41} Regarding the computer disks, Jones testified that he retrieved them from appellant's office at Hughes's direction and gave them to her supervisor. Hughes testified that her supervisor provided the computer disks to her. Appellant presented no evidence establishing that anyone with access to the computer disks corrupted them after they were removed from appellant's office.

{¶ 42} Appellant also contends that the SPBR ignored appellee's failure to present evidence refuting his testimony that he was unaware that Price was utilizing his laptop computer to exchange e-mails with his friends. Initially, we note that the record belies appellant's assertion. Price testified that appellant was aware that he sent e-mails using appellant's AOL e-mail account and never told him to stop doing so. Further, appellant's argument misses the point. As noted by the ALJ, appellant violated appellee's standards of employee conduct and computer policy precisely because he was unaware that Price was even using his laptop. Indeed, appellant admitted that he was responsible for maintaining the security and integrity of the laptop and that Price's use of the laptop was prohibited by appellee.

{¶ 43} Appellant further contends that the SPBR failed to consider appellant's testimony that he never received notice of appellee's computer-usage policy. Again, the record belies appellant's contention. The ALJ noted that appellant had so testified. In addition, the ALJ noted that Carson testified that while he was unsure whether the computer policy was distributed in paper form or electronically, he was certain he would have informed the managers, including appellant, that such a policy existed and that they should tell their employees to follow it. In addition, Carson testified that he was certain appellant was provided with the standards of employee conduct. Those standards provide that it is the responsibility of all employees to familiarize themselves with and adhere to the policies and procedures promulgated by appellee and that all state-issued property, including computer hardware, software, e-mail, and Internet usage, is to be used only for official purposes.

{¶ 44} Appellant also contends that the ALJ's findings regarding appellant's e-mail usage contradict the evidence presented at the hearing. Appellant contends that one of the offending e-mails was sent after the laptop was confiscated on May 30, 2002; thus, he could not have violated appellee's computer-usage policy by sending an e-mail from his personal AOL account on his personal laptop. Initially, we note that appellant does not specify the e-mail to which he refers; therefore, it is difficult for this court to review this claim. Further, presuming that the e-mail to which appellant refers is one sent on June 13, 2002, we note that the ALJ made only a passing reference to it in her recitation of evidence presented at the hearing, and, in doing so, noted appellant's testimony that he did not have access to his departmental laptop on that date. Indeed, the ALJ did not specifically cite that e-mail in either her findings of fact or conclusions of law. But even without this particular e-mail, appellee presented evidence of other inappropriate materials recovered from the laptop and desktop, materials that sufficiently established that appellant violated appellee's standards of employee conduct and computer-usage policy.

{¶ 45} Appellant also challenges the ALJ's finding that he engaged in dishonest and fraudulent acts with regard to the loan transaction with Dempsey. Appellant argues that no evidence refuted appellant's testimony to the contrary. Once again, the record belies appellant's claim. Hughes's report, which was admitted at the hearing, includes her notes from the interviews she conducted with Dempsey and Anthony. Those interviews support the ALJ's finding that appellant engaged in dishonest and fraudulent conduct in taking $15,000 from Dempsey under the false pretense of securing a loan for him and thereafter failing to return the money when he was unable to secure the loan.

{¶ 46} Appellant also challenges the ALJ's finding that appellant was untruthful during the investigation because he denied having any business

dealings with Anthony when documentary evidence established that he did. Appellant contends that the documentary evidence relied upon by the ALJ established that appellant and Anthony contemplated, but did not consummate, a business relationship. Although, once again, appellant does not cite the specific evidence to which he refers, we presume he refers to an April 2, 2002 letter wherein Anthony indicated to appellant that he wished to dissolve the business relationship the two contemplated and that appellant had performed no work in furtherance of the relationship. Appellant's contention that a business relationship does not involve the negotiation process involving the performance of work is unpersuasive. Further, the ALJ also cited a February 17, 2001 letter wherein Anthony praised appellant for the "outstanding job" appellant had done for Anthony's company. The ALJ cited this letter as evidence "clearly alluding to a business relationship with Mr. Anthony and [his company]." Thus, the ALJ's finding that appellant untruthfully denied business dealings with Anthony is supported by reliable, probative, and substantial evidence.

{¶ 47} Appellant also challenges the ALJ's finding that appellant's carelessness regarding his laptop allowed access to sensitive information such as Social Security numbers and protected health information. Appellant contends that no evidence established that any non-state employee actually accessed sensitive material from his laptop while it was not in his possession. Appellant's argument is unavailing. The ALJ did not conclude that any non-state employee actually obtained sensitive information from appellant's laptop; rather, the ALJ was concerned, legitimately so, about the *potential* for such an event. Carson's testimony supports the ALJ's finding. Indeed, Carson testified that "[i]t is possible for that information to be looked at on the laptop."

{¶ 48} Finally, appellant contends that the ALJ improperly resolved credibility issues in favor of appellee. In particular, appellant notes that he testified that Wanda opened the desktop e-mail that contained the pornographic photographs. The ALJ noted appellant's testimony, but further noted that Hughes's report indicated that Wanda Brown denied ever opening any files for appellant. This was a dispute of fact to be resolved by the ALJ. The ALJ simply found appellant's testimony to be noncredible, a finding within the ALJ's province as the finder of fact.

{¶ 49} For all these reasons, we conclude that the trial court did not abuse its discretion in determining that the SPBR's order was supported by reliable, probative, and substantial evidence and was in accordance with law. Accordingly, we overrule appellant's first assignment of error.

{¶ 50} Appellant's second assignment of error contends that the trial court abused its discretion in affirming the SPBR's order because the SPBR failed to

afford sufficient weight to appellant's disparate-treatment evidence. Appellant argues that the SPBR administered more severe discipline to him than to two other employees, William Meyer and Douglas McGuckin, for similar conduct.

{¶ 51} Ohio Adm.Code 124–9–11(A) provides that the SPBR "may hear evidence of disparate treatment between the appellant and other similarly situated employees of the same appointing authority for the purpose of determining whether work rules or administrative policies are being selectively applied by the appointing authority or to determine whether the discipline of similarly situated employees is uniform." Ohio Adm.Code 124–9–11(B) provides that "[e]vidence of disparate treatment will be considered in evaluating the appropriateness of the discipline which was imposed."

{¶ 52} The issue of whether employees are similarly situated sufficiently to merit consideration as evidence of disparate treatment is for the trier of fact, i.e., the SPBR. *Swigart v. Kent State Univ.*, Portage App. No. 2004–P–0037, 2005-Ohio-2258, 2005 WL 1077176, ¶ 37, citing *Ohio Dept. of Mental Retardation & Developmental Disabilities v. Moore* (June 18, 1998), Gallia App. No. 98 CA 1, 1998 WL 334496. Although the SPBR has discretion to consider evidence of disparate treatment in evaluating the appropriateness of discipline, the Ohio Administrative Code does not mandate absolute uniformity of discipline. " 'An employee's discipline must stand or fall on its own merits.' " Id., quoting *Green v. W. Res. Psychiatric Habilitation Ctr.* (1981), 3 Ohio App.3d 218, 219, 3 OBR 248, 444 N.E.2d 442.

{¶ 53} Before considering the merits of appellant's argument, we must address appellant's contention regarding a statement made by the trial court in its decision and entry. The court stated that it "must observe that it is not privy to all of the facts and circumstances surrounding Mssrs. Meyer and McGuckin. The Court is not in a position to do a comparative analysis of why the Board acted more lenient towards these employees, if it is alleged that it did so." Appellant argues that the court erroneously concluded that it was without authority to review the SPBR's decision to disregard his disparate treatment evidence.

{¶ 54} We adopt appellee's interpretation of the court's statement, i.e., that the court could not adequately review the issue because appellant failed to provide the court with sufficient information about the evidence he presented at the administrative hearing pertaining to the alleged disparate treatment. Indeed, a review of appellant's brief filed in the common pleas court asserts only that "[o]ther similarly-situated employees, William Meyer and Douglas McGuckin, received suspensions and/or other disciplinary action far short of removal for similar conduct." Appellant's failure to develop his argument by pointing to

specific evidence of disparate treatment constituted a waiver of the issue. Accordingly, the court did not abuse its discretion in choosing not to address the issue.

{¶ 55} Although appellant has presented the identical argument before this court, we shall, in the interest of justice, address the issue. In support of his disparate treatment argument regarding Meyer, appellant offered the testimony of Carson. Carson testified that Meyer was a bargaining-unit employee who reported to Dave Smith, an External Audit Supervisor, who reported to Vera Scott, an External Audit Manager I, who reported to Carson, an External Audit Manager II. Appellee objected to the admission of any testimony related to Meyer on the grounds that he was not similarly situated to appellant for purposes of Ohio Adm.Code 124–9–11 because he was a bargaining-unit employee and did not report directly to Carson. The ALJ sustained appellee's objection, but granted appellant's oral motion for leave to proffer evidence at the conclusion of the hearing. That evidence consists of a series of uncertified documents related to appellee's imposition of a two-day suspension resulting from Meyer's unapproved seven-day absence from work. In her report and recommendation, the ALJ determined that Meyer was not similarly situated because he was a bargaining-unit employee.

{¶ 56} We agree with appellee that Meyer is not a valid comparable for purposes of disparate treatment. Meyer was employed as an External Auditor III, a nonsupervisory position; appellant was an External Audit Manager I who managed ten employees. Further, Meyer was a member of the collective-bargaining unit and was, thus, subject to the provisions of the collective-bargaining agreement. Those provisions undoubtedly addressed the imposition of employee discipline. In contrast, appellant was an exempt employee not subject to such provisions. Appellant and Meyer did not report directly to the same individual. And appellant and Meyer did not commit the same infractions. Accordingly, the ALJ did not abuse her discretion in concluding that Meyer was not similarly situated.

{¶ 57} In support of his disparate treatment argument regarding McGuckin, appellant offered the testimony of Carson, as well as documentary evidence related to the discipline imposed upon McGuckin. That evidence established that McGuckin was an External Auditor Manager II who, like Carson, reported directly to Bureau Chief William Severns. In July 2002, McGuckin received a written reprimand for "preparing and submitting an official document knowingly containing false and misleading information implying that a senior manager had acted in an improper and possibly illegal manner." Carson testified that the reprimand arose out of McGuckin's transmission to Severns of a single, work-related e-mail, which included cryptic language about an examination taken by an

internal candidate for a position within the agency. In her report and recommendation, the ALJ determined that McGuckin was not similarly situated because appellant and McGuckin were not on the same managerial level and did not engage in similar conduct.

{¶ 58} For the reasons noted by the ALJ, we also conclude that McGuckin is not a valid comparable for purposes of disparate treatment. McGuckin's conduct does not compare in any respect to the magnitude and breadth of the conduct for which appellant was removed from employment. The ALJ did not abuse her discretion in concluding that McGuckin was not similarly situated. Accordingly, we overrule appellant's second assignment of error.

{¶ 59} Having overruled appellant's first and second assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

KLATT and TYACK, JJ., concur.