[Cite as *Seaquist v. Dayton*, 2023-Ohio-4563.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| KYLE SEAQUIST | : | |
| | : | |
| Appellant | : | C.A. No. 29821 |
| | : | |
| v. | : | Trial Court Case No. 2022 CV 4341 |
| | : | |
| CITY OF DAYTON, et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on December 15, 2023

. . . . . . . . . . .

DAVID M. DUWEL, Attorney for Appellant

NORMA M. DICKENS, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Kyle Seaquist appeals from the trial court's judgment affirming the City of Dayton Civil Service Board's decision to uphold Seaquist's termination for disciplinary reasons. For the following reasons, we affirm the judgment of the trial court.

**I.      Factual and Procedural Background**

{¶ 2} Seaquist started working for the City of Dayton in the water department on

February 8, 2015. In 2020, Seaquist transferred to the City's Department of Aviation, where he served as Construction Electrician at the Dayton International Airport.

{¶ 3} At the beginning of the COVID-19 pandemic, the City implemented several health and safety policies for worker protection. On August 9, 2021, the City issued a new iteration of Personnel Policy 13.04 in compliance with the Centers for Disease Control and Prevention's (CDC) revised guidance on mask-wearing. Personnel Policy 13.04 ("the Policy") contained a mask policy provision ("the mask policy"), which provided, in part, that all City employees, regardless of their vaccination status, were required to wear a mask that covered their nose and mouth at all times while on duty, albeit with a few exceptions. The Policy also encouraged all employees to receive the COVID-19 vaccination and addressed the City's weekly virus testing requirements for any employee who declined to receive a COVID-19 vaccination.

{¶ 4} Seaquist opposed receiving the COVID-19 vaccine and wearing a mask. Consequently, he sought an exemption hearing regarding the Policy, which was held on August 24, 2021. When Seaquist arrived at City Hall for his exemption hearing, he was spotted not wearing a mask by Ken Couch, the director of human resources, who advised Seaquist to go to the human resources office and obtain a mask, which Seaquist did not do. Shortly thereafter, when Seaquist arrived at the hearing room still not wearing a mask, Dawn Manuel, the hearing officer, observed Seaquist not wearing a mask and gave him one to wear. Rather than wear the mask properly across his nose and mouth, Seaquist put the mask around his ears and under his chin. When Manuel repeatedly asked Seaquist to wear the mask in accordance with the City's mask policy, he refused. As a

result, his exemption hearing was adjourned, and he was sent home for the day.

{¶ 5} The next day, on August 25, 2021, Seaquist was offered the opportunity at a show cause hearing conducted over Zoom to demonstrate why he should be permitted to return to work after his repeated refusal to comply with the mask policy. After confirming that he did not intend to comply with the mask policy, Seaquist was advised that he was not permitted to return to work without wearing a mask and, because he was unable to return to work, he was given the opportunity to use his personal accrued paid leave during his absence. Seaquist refused to use his personal leave for his absence from work due to his mask non-compliance and was advised that, by doing so, he would be deemed absent without leave (AWOL), subjecting him to future discipline, up to and including termination. Thereafter, Seaquist never returned to work.

{¶ 6} In September 2021, as part of its formal disciplinary process, the City charged Seaquist with violating Rule 13 of the Civil Service Rules and Regulations of the City of Dayton. Specifically, he was charged in Count I with conduct unbecoming an employee in public service, insubordination, violation of any lawful or reasonable regulations or orders made or given by a superior, and violation of any enacted or promulgated statute, ordinance, rule, policy, regulation or other law and in Count II with absence without leave or failure to return from leave. With respect to the first charge, the City alleged that, on August 24, 2021, Seaquist failed to follow a direct order given to him by Ken Couch to obtain a mask from the human resources department and wear it while in City Hall, as required by the City's mask policy. The City also alleged that Seaquist failed to follow a direct order given to him by Dawn Manuel to adjust his mask to properly

cover his nose and mouth during his exemption hearing in City Hall, as also required by the City's mask policy. The second charge arose from Seaquist being placed on unpaid leave due to his refusal to wear a mask and his decision to remain on unpaid leave rather than to use his accrued leave, rendering him AWOL.

{¶ 7} A hearing regarding the charges against Seaquist was held on October 21, 2021, during which Seaquist denied the charges. The Director of the Department of Aviation found Seaquist guilty of the charges and ordered Seaquist's termination of employment on October 28, 2021.

{¶ 8} Seaquist appealed his employment discharge, and an appeal hearing was held before the City of Dayton Civil Service Board ("the "Board") on May 19, 2022. In its decision, the Board stated that a mandatory mask policy was a common component in a plan to stem the spread of the COVID-19 virus among most employers, including federal, state, and local governments, and that such safety precautions were terms of employment that, if broken, could justify termination of employment except in limited circumstances, such as medical or religious reasons preventing a worker from wearing a mask. The Board explained that Seaquist had not asserted a medical or religious reason to challenge the Policy but, rather, displayed conduct that was tantamount to having said "I don't like your rules and/or I really don't want to work here." The Board reasoned that employers have a basic right to devise and enforce nondiscriminatory work rules, especially those pertaining to health and safety in the workplace, and specifically that government employers have the authority to enforce regulations on their employees' conduct designed to protect health, safety, and welfare of the public and the employees

themselves. Based on this reasoning, the Board concluded that Seaquist had been guilty of committing infractions that justified his employment discharge, thereby affirming the Director's decision to terminate him.

{¶ 9} Thereafter, Seaquist filed his notice of administrative appeal in the trial court, asserting that the decision of the Board was unjust, unreasonable, not supported by the facts, and contrary to law. The trial court affirmed the order of the Board, finding that the City's decision to place Seaquist in AWOL status and to later discharge him was supported by reliable, substantial, and probative evidence and was in accordance with law. Seaquist appeals.

## II. Assignments of Error

{¶ 10} Seaquist asserts the following two assignments of error:

The trial court erred when it found that the Board's Order in respect to Charge I and the two specifications was supported by reliable, probative, and substantial evidence.

The trial court erred when it failed to determine whether Charge II was substantiated by reliable, probative, and substantial evidence.

{¶ 11} The suspension, demotion, or removal of civil servants is governed by R.C. 124.34. *Lamanna v. City of Dayton*, 2d Dist. Montgomery No. 28136, 2019-Ohio-1260, ¶ 13. In cases of removal of an employee for disciplinary reasons, "either the appointing authority or the officer or employee may appeal from the decision of the state personnel board of review or the commission, and any such appeal shall be to the court of common pleas in accordance with section 119.12 of the Revised Code." R.C. 124.34(B).

{¶ 12} Pursuant to 119.12(B)(4), appeals under R.C. 124.34(B) from a decision of the state personnel board of review shall be taken to the court of common pleas of the county in which the appointing authority is located. "Any party desiring to appeal shall file a notice of appeal with the agency setting forth the order appealed from and stating that the agency's order is not supported by reliable, probative, and substantial evidence and is not in accordance with law." R.C. 119.12(D).

{¶ 13} Generally, in the hearing of an administrative appeal, the trial court is confined to the record as certified to it by the agency. R.C. 119.12(L). The trial court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 119.12(N). In the absence of this finding, the trial court may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. *Id.*

{¶ 14} The trial court's judgment shall be final and conclusive unless reversed, vacated, or modified on appeal. R.C. 119.12(O). "These appeals may be taken either by the party or the agency, shall proceed as in the case of appeals in civil actions, and shall be pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code." *Id.*

{¶ 15} "While the determination to be made by the court of common pleas is based on whether there is reliable, probative and substantial evidence to support the board's finding, the standard of review to be applied by this court is whether the court of common

pleas abused its discretion in making that determination." (Citations omitted.) *Swigart v. Kent State Univ.*, 11th Dist. Portage No. 2004-P-0037, 2005-Ohio-2258, ¶ 22, quoting *Kennedy v. Marion Corr. Inst.*, 69 Ohio St.3d 20, 21-22, 630 N.E.2d 324 (1994). "Under an abuse-of-discretion standard, a lower court decision will not be reversed for mere error, but only when the court's decision is unreasonable, arbitrary, or unconscionable." *Lamanna*, 2d Dist. Montgomery No. 28136, 2019-Ohio-1260, at ¶ 17, quoting *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 9. "If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion." *Id.*, quoting *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575 (1998).

{¶ 16} We will consider both of Seaquist's assignments of error together. In his first assignment of error, Seaquist asserts that Ken Couch and Dawn Manuel, who gave him orders to wear a mask at his exemption hearing, were not his superiors as human resources personnel, and thus he was not bound to follow their orders. For those reasons, Seaquist argues that he could not be terminated for insubordination as indicated in the charges against him, and thus the trial court erred in affirming the Director's decision to terminate him. In his second assignment of error, Seaquist argues that the trial court erred when it failed to sufficiently analyze his argument with respect to the AWOL charge. We disagree.

{¶ 17} The trial court noted that the City adopted Personnel Policy 13.04 based on directions from the CDC related to preventing the spread of the COVID-19 virus, which generally required that all employees wear a mask covering the nose and mouth. The trial

court explained that Seaquist was charged with violating the mask-safety rules and was subsequently discharged from his employment with the City because he adamantly refused to wear a mask, even at his exemption hearing after multiple requests were made. The trial court further explained that, even after Seaquist's refusal to wear a mask at his exemption hearing, Seaquist was provided a show cause hearing with proper notice, where it was confirmed that Seaquist did not intend to follow the mask policy, and he was placed on leave for refusing to follow the policy. Seaquist then refused to use his accrued leave for his absence and was advised that, in doing so, he would be placed in AWOL status, which could subject him to further discipline, up to an including termination. Finally, the trial court stated that Seaquist did not contest that he had failed to comply with the mask policy and did not deny that he was on duty when he appeared without a mask in violation of the Policy at the exemption hearing while on paid administrative leave. Based on its review of the entire record, the trial court concluded that there were sufficient grounds for terminating Seaquist's employment because he ignored directions to wear a mask pursuant to the mask policy by the very City employees who were providing him with an opportunity for an exemption hearing and then failed to show cause as to why he should be permitted to return to work when he adamantly refused to wear a mask.

{¶ 18} In this case, there were clear instances of insubordination when Seaquist actively ignored and refused to comply with the mask policy both before and then during his exemption hearing despite numerous requests by the hearing officer for him to wear a mask. Additionally, the other examples of Seaquist's conduct unbecoming an employee, violations of the mask policy, and refusal to use his accrued leave and consequential

AWOL status, when taken as a whole, supported termination, as the trial court determined. Our review of the trial court's decision is limited to examining the record and determining whether its decision was supported by reliable, probative, and substantial evidence. Based on the record before us, we conclude that the trial court's decision upholding the decision of the Board was supported by a preponderance of substantial, reliable, and probative evidence. Under these circumstances, we cannot say that the trial court erred and abused its discretion in affirming the Board's decision upholding the Director's termination of Seaquist for disciplinary reasons.

### III.    Conclusion

**{¶ 19}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.